CAPITOL INDUSTRIES–EMI, INC.,
Plaintiff-Appellant,

v.

William M. BENNETT, Kenneth Cory, Richard Silberman, individually and as members of, and Martin Huff, individually, and as Executive Officer of, the Franchise Tax Board, State of California, Defendants-Appellees.

EMI LIMITED, Plaintiff-Appellant,

v.

William M. BENNETT, Kenneth Cory, Richard Silberman, individually and as members of, and Martin Huff, individually and as Executive Officer of, the Franchise Tax Board, State of California, Defendants-Appellees.

Nos. 80–4113, 80–4114.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 1981.

Decided Feb. 16, 1982.

As Amended July 22, 1982.

Valentine Brookes, San Francisco, Cal., argued, for plaintiff-appellant; Lawrence V. Brookes, Brookes & Brookes, San Francisco, Cal., on brief.

Charles C. Kobayashi, Deputy Atty. Gen., Sacramento, Cal., for defendants-appellees.

Before WALLACE and PREGERSON, Circuit Judges, and BYRNE,* District Judge.

WM. MATTHEW BYRNE, Jr., District Judge:

This appeal involves two companion cases brought by an United Kingdom corporation and its United States subsidiary corporation, respectively, for injunctive and declaratory relief to prevent officials of the State of California from assessing additional income taxes against the subsidiary.

I

Appellant in the first action (No. 80–4113), Capitol Industries-EMI, Inc. ("Capitol"), is a Delaware corporation, with its principal place of business in California. Capitol is in the business of recording phonograph records and tapes for sale through commercial channels. Capitol contends that its business is conducted almost exclusively in the United States.

Appellant in the second action (No. 80–4114), EMI, Limited ("EMI"), is a United Kingdom corporation, which owns more than 70% of the stock of Capitol.[1] EMI owns a group of subsidiaries, fourteen of which operate outside of the United Kingdom. EMI, through its subsidiaries other than Capitol, is engaged in the same business as Capitol, but primarily in markets other than in the United States. In addition, EMI and its foreign subsidiaries, other than Capitol, are engaged in diversified businesses unrelated to the recording industry.

In the seven years involved in this tax dispute, 1968–1974, Capitol has paid annual income taxes in California.[2] Neither EMI nor its subsidiaries, other than Capitol, have filed any income tax returns with the United States or any state therein. However, EMI and its other subsidiaries have paid income taxes in their respective home countries.

The Franchise Tax Board, State of California ("FTB"), contends that California law requires a combined report of a taxpayer, including all commonly owned or controlled corporations that are engaged in a unitary business. The FTB has determined that Capitol, EMI and other EMI subsidiaries are engaged in a single business. Therefore, the FTB has proposed to assess against Capitol an additional tax liability for the seven years in question, based on the state's "unitary method" of taxation.[3] It is this proposed assessment that Capitol and EMI challenge.

Application of the unitary scheme under California law, as proposed by the FTB, involves the combining of the net incomes of Capitol, EMI, and all of EMI's other subsidiaries, related to the music portion of

---

* The Honorable Wm. Matthew Byrne, Jr., United States District Judge for the Central District of California, sitting by designation.

1. According to appellees, EMI owns more than 70% of the stock of Capitol. According to appellants, EMI owns more than 90% of the stock of Capitol.

2. In the seven years involved in this dispute, Capitol has made annual self-assessed state franchise tax payments averaging $88,841.68.

3. According to materials submitted by the parties subsequent to oral argument on appeal, the FTB has adjusted the proposed additional assessments against Capitol to reflect its determination that the unitary business in which Capitol and EMI are involved encompasses only the "music activities" of the "EMI group." In addition, the proposed assessments were adjusted to reflect agreements between Capitol and the FTB related to other issues not before this Court. As a result of these adjustments, the revised proposed assessments are as follows:

| Year | Amount |
| --- | --- |
| June 30, 1968 | $ 42,171 |
| June 30, 1969 | $118,946 |
| June 30, 1970 | $207,677 |
| June 30, 1971 | $ 0 |
| June 30, 1972 | $ 75,527 |
| June 30, 1973 | $ 16,827 |
| June 30, 1974 | $344,185 |

their businesses, and the apportioning of that combined income between California and the rest of the world, based on a formula using the California ratio of property, payroll, and sales, to the world-wide figures for the same factors.[4]

In the course of the FTB's investigation of Capitol, it has demanded that Capitol provide certain business records of EMI, and EMI's other subsidiaries, under the threat that Capitol's failure to comply would result in a penalty assessment. EMI informed Capitol that it would not provide some of the information demanded because, under the Official Secrets Act of the United Kingdom, some of the information (presumably information related to military contracts entered into by EMI and the British government) is not disclosable. EMI refused to provide other information on the grounds that it either lacked access to such information, or because it asserts that California lacks jurisdiction over EMI and its non-United States subsidiaries.

Capitol filed a protest with the FTB concerning the proposed assessment, which is still pending.[5] In addition, Capitol has petitioned the FTB to authorize the use of a reporting scheme other than the unitary method, as applied to the proposed assessment.[6] Subsequent to oral argument on appeal, the FTB denied that petition.[7]

Capitol filed its action in United States District Court against William Bennett, Kenneth Cory, Richard Silberman and Martin Huff ("Board Members"), individually and as members of the FTB.[8] Capitol seeks injunctive and declaratory relief to prevent the proposed assessment. Essentially, Capitol argues that unitary treatment of its business and that of EMI and other EMI subsidiaries is inappropriate under Califor-

4. California Revenue and Taxation Code section 25101 provides in part:

When the income of a taxpayer subject to the tax imposed under this part is derived from or attributable to sources both within and without the state the tax shall be measured by the net income derived from or attributable to sources within this state in accordance with the provisions of article 2 (commencing with section 25120 of this chapter) . . . .

Cal.Rev. & Tax. Code § 25101. Section 25128 provides:

All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three.

Cal.Rev. & Tax. Code § 25128. Sections 25129 through 25136 define and provide for the computation of the property, payroll and sales factors. Cal.Rev. & Tax. Code §§ 25129–25136.

5. Section 25664 of the Revenue and Taxation Code provides:

Within 60 days after mailing of each notice of additional tax proposed to be assessed the taxpayer may file with the Franchise Tax Board a written protest against the proposed additional tax, specifying in the protest the grounds upon which it is based.

Cal.Rev. & Tax. Code § 25664.

6. Section 25137 of the Revenue and Taxation Code provides:

If the allocation and apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the Franchise Tax Board may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

a. Separate accounting;

b. The exclusion of any one or more of the factors;

c. The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

d. The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

7. Appellees submitted a copy of the Board's resolution, dated October 21, 1981, denying Capitol's Section 25137 petition challenging the subject proposed additional assessment.

8. Subsequent to oral argument on appeal, appellants filed a Motion for Designation of Substituted Parties, pursuant to Federal Rule of Civil Procedure 25(d). Under Federal Rule of Appellate Procedure 43(c), the substitution of public officials who have succeeded those named as parties occurs automatically. An order of substitution is unnecessary under Rule 43(c) but such an order may be entered at anytime thereunder. Upon the representations of appellants as to the present membership of the FTB and upon the non-opposition of appellees to the motion for designation of substitution, this Court hereby orders that Mary Ann Graves, Ernest J. Dronnenburg, Jr., and Gerald H. Goldberg, be substituted for Richard Silberman, William M. Bennett, and Martin Huff, as defendants-appellees in these actions, pursuant to Rule 43(c).

nia law and violates the Foreign Commerce Clause of the United States Constitution, Art. I, Sec. 8, Clause 3.[9]

EMI filed its action in federal court against the identical defendants and asserts essentially the same claims as Capitol.[10] Additionally, EMI alleges that the proposed assessment on its subsidiary Capitol would negatively affect its stock holdings in Capitol. Both EMI and Capitol also seek relief from the FTB's demand that Capitol provide certain records of EMI and its foreign subsidiaries.

 The Board Members filed motions to dismiss both actions. Capitol and EMI then filed motions for summary judgment. The district court treated the Board Members' motions as motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. The district court denied Capitol's and EMI's motions and granted the Board Members' motions on the ground that the Anti-Injunction Act precluded subject matter jurisdiction because a "plain, speedy and efficient" state court remedy existed for the claims asserted by Capitol and EMI. 28 U.S.C. § 1341.[11] Capitol and EMI appeal from that order.

## II

 Section 1341 provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.[12] This statute has its roots in equity practice, the principles of federalism, and in recognition of the need of a state to administer its own fiscal operations. *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943) ("*Great Lakes*"). This Court has held that Section 1341 also generally bars actions for declaratory relief against the assessment or collection of state taxes. *See*

**9.** In particular, Capitol argues that the proposed assessment is unconstitutional in view of *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), where the Supreme Court held that the Commerce Clause of the United States Constitution prohibited a state from imposing a nondiscriminatory *ad valorem* tax on foreign-owned instrumentalities engaged solely in international commerce.

**10.** *See* note 8 *supra.*

**11.** Appellees also contend that the present actions are barred from being brought in federal court by the Eleventh Amendment.

A court should not pass upon a constitutional question although properly presented by the record, if there is also present a statutory ground upon which the case may be disposed of. *See, generally, Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). This principle has varied application, *id.*, and presumably applies where two grounds are presented for defeating subject matter jurisdiction. *See*, generally, 1 *Moore's Federal Practice* ¶ 0.60[3], at 620–21 (2d ed. 1980). Thus, this Court should first consider whether the district court could exercise jurisdiction notwithstanding the proscriptions of the Anti-Injunction Act. If the district court order is affirmed on this ground, this Court need not reach the constitutional question presented by the Eleventh Amendment.

**12.** The legislative history of Section 1341 reflects two main purposes: First, the section was aimed at eliminating the discriminatory effect on citizens of the taxing state, who can only bring their tax disputes before state courts, while out-of-state corporations could take their disputes into either federal or state court. *See Aluminum Co. of America v. Dept. of Treasury of the St. of Mich.*, 522 F.2d 1120, 1123–24 (6th Cir. 1975); S.Rep.No. 1035, 75th Cong. 1st Sess. 1–2 (1937). Second, the section was intended to eliminate the disruption of state financing efforts by out-of-state corporations. *Id.; see Perez v. Ledesma*, 401 U.S. 82, 128 n.17, 91 S.Ct. 674, 698 n.17, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943) ("*Great Lakes*").

The Congressional Record indicates two secondary reasons behind the enactment of Section 1341. First, Congress was concerned with the added expense of litigating in federal courts that might make it financially unsound for state or local taxing authorities to contest a wealthy corporation's tax liability. *See Aluminum Co. of America*, 522 F.2d at 1124, *citing* 81 Cong.Rec. 1416–17 (1937). Second, Congress intended to relieve the congestion in the federal courts by letting state courts settle what were viewed as essentially state controversies. *Id.*

*Housing Authority of the City of Seattle v. State of Washington*, 629 F.2d 1307, 1310 (9th Cir. 1980);[13] *see also Great Lakes*, 319 U.S. at 300, 63 S.Ct. at 1074. The jurisdictional bar of Section 1341 is not avoided by challenging the constitutionality of the state statute that authorizes the subject assessment or collection. *Mandel v. Hutchinson*, 494 F.2d 364, 366 (9th Cir. 1974) *citing Matthews v. Rodgers*, 284 U.S. 521, 525–26, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932). The issue here is whether California affords Capitol and EMI a "plain, speedy and efficient" remedy.

### III

### A

We first address the state remedies available to Capitol. Under California law, a suit for an injunction, declaratory relief, or other equitable process to prevent or enjoin the assessment or collection of any taxes is forbidden. Section 32, Art. XIII, Calif. Const.; Cal.Rev. & Tax Code § 26101 (as-

sessment or collection of corporate or bank taxes). California, however, does provide corporate taxpayers with administrative and judicial remedies for challenging assessments. The taxpayer may petition the FTB to seek authorization to use a method other than the unitary method of reporting. Cal.Rev. & Tax.Code § 25137.[14] In addition, a taxpayer that believes it has been illegally or excessively assessed may file a protest with the FTB. Cal.Rev. & Tax. Code § 25664.[15] If the protest is denied, the taxpayer may file an appeal with the California State Board of Equalization. Cal.Rev. & Tax.Code § 25667.[16] Upon the disposition of such an appeal, and payment of the assessed tax, the taxpayer may bring an action in state court against the FTB for a refund. Cal.Rev. & Tax.Code § 26102.[17]

This Court has held that such administrative proceedings, followed, if necessary, by a trial *de novo* in state court, provide a taxpayer with an adequate remedy, for purposes of Section 1341. *See Mandel*, 494 F.2d at 367;[18] *Aronoff v. Franchise*

---

**13.** *Accord Aluminum Co. of America*, 522 F.2d 1120; *City of Houston v. Standard-Triumph Motor Co.*, 347 F.2d 194 (5th Cir. 1965), *cert. denied*, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966); *Helmsley v. City of Detroit*, 320 F.2d 476, 478 (6th Cir. 1963).

**14.** *See* note 6 *supra*.

**15.** *See* note 5 *supra*. Section 25666 of the Calif.Rev. & Tax. Code provides:

If a protest is filed the Franchise Tax Board shall reconsider the proposed assessment, and if the taxpayer has so requested in its protest, shall grant the taxpayer, or its authorized representatives an oral hearing. After consideration of the protest and the evidence adduced in the event of such oral hearing, the Franchise Tax Board's action upon the protest is final upon the expiration of 30 days from the date when it mails notice of its action to the taxpayer unless within the 30-day period the taxpayer appeals in writing from the action of the Franchise Tax Board to the [State Board of Equalization].

**16.** Section 25667 of the Cal.Rev. & Tax. Code provides:

The appeal [from the denial by the Franchise Tax Board of the taxpayer's protest] shall be addressed and mailed to the State Board of Equalization at Sacramento, California.... The board shall hear and determine the appeal and forthwith notify the taxpayer and

the Franchise Tax Board of its determination and the reasons therefor. Such determination shall be final upon the expiration of 30 days from the time of such determination unless within such 30-day period the taxpayer or the Franchise Tax Board files a petition for rehearing with said board. In that event the board's determination shall not become final until the expiration of 30 days from the time the board issues its opinion on the petition.

**17.** Section 26102 of the Cal.Rev. & Tax. Code provides:

Except as provided in Section 26103a [which pertains to the statute of limitations], after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed against it under this part is void in whole or in part may bring an action, upon the grounds set forth in its claim for refund, against the Franchise Tax Board for recovery of the whole or any part of the amount paid.

**18.** In *Mandel v. Hutchinson*, this Court also discussed the availability to a taxpayer of a writ of mandate "if there is no adequate remedy at law." 494 F.2d 364, 367 (9th Cir. 1974). The Court recognized, however, that the California Supreme Court has generally refused to grant a writ of mandate because of the adequacy of the State's refund procedure at law. *Id.*

*Tax Board of the State of California*, 348 F.2d 9, 11 (9th Cir. 1965) ("it has consistently been held, without a single instance of deviation that the refund action provided by California Personal Income Tax law is a 'plain, speedy and efficient remedy' such as to invoke the restraints of [section] 1341"); [19] *see also Harsh California Corp. v. County of San Bernardino*, 262 F.2d 626 (9th Cir. 1958); *Adams County v. Northwestern Pacific Railway Co.*, 115 F.2d 768, 775 (9th Cir. 1940) (ordinarily, an injunction in federal court is unavailable where the exclusive remedy is an action for refund).[20]

Capitol argues, however, that the application of the doctrine of exhaustion of administrative remedies renders its state remedies far less "speedy and efficient" than a declaratory or injunctive action in federal court.

It is unclear to what extent a taxpayer must exhaust its administrative remedies

The Court concluded in *Mandel* that the California state court "remedies are 'plain, speedy and efficient,'."

In referring to "remedies", it is not clear whether the Court was referring to the alternative refund actions available to the appellant with respect to the particular type of tax involved in that case, or whether the Court was referring to the alternative refund actions, as well as, the possibility of a mandamus action. In any event, there is no indication that the Court in *Mandel* sought to modify the holding of *Aronoff* that a refund action in state court, by itself, generally is an effective remedy, within the meaning of section 1341.

19. Capitol urges this Court to reconsider its holding in *Aronoff*, in light of *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). In *Tully*, the Supreme Court held that the taxpayers had an adequate remedy under a New York statute that provided for a declaratory action. Capitol contends that this holding, coupled with the Supreme Court's omission of any discussion of New York's post-payment remedies, indicates that the Court considers only pre-payment procedures as adequate remedies, within the meaning of Section 1341. (This argument assumes, of course, that a postpayment remedy was available to the particular taxpayer in *Tully* and that the issue was raised in that case).

The holding in *Tully* neither mandates nor intimates that the Ninth Circuit must abandon its rule, which appears consistent with prior Supreme Court decisions, that a refund action in state court provides a taxpayer with an adequate remedy. *See Great Lakes*, 319 U.S. at 298, 63 S.Ct. at 1073 (federal courts in equity will deny relief to the taxpayer "especially where the state ... has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax"); *Matthews v. Rodgers*, 284 U.S. 521, 526, 52 S.Ct. 217, 220, 76 L.Ed. 447 (1932) (payment of tax under protest and suit for recovery saves taxpayer his federal rights and defeats the federal court's jurisdiction to enjoin collection). The holding of *Aronoff* is also consistent with the express legislative intent of Section 1341, not to interfere with state assessment and collection of taxes, *see* pp. 1113–1115 and note 16 *supra*, and the law of other circuits. *See Nonresident Taxpayers Ass. v. Municipality of Philadelphia*, 478 F.2d 456, 458 (3d Cir. 1973) (Pennsylvania refund suit provided adequate remedy); *Helmsley*, 320 F.2d 476 (Michigan refund action); *see also Houston*, 347 F.2d at 199 (Texas implied action for refund may constitute an adequate remedy).

Capitol argues that postpayment actions are inherently less speedy than prepayment actions. Section 1341, however, does not mandate the "speediest" remedy in order to preclude subject matter jurisdiction in federal district court. To the extent that a postpayment action is less speedy than a prepayment action, a point not conceded by appellees, a taxpayer's interest in having the speediest remedy possible is outweighed by the burden that prepayment actions might impose on a state's administration of its taxation system.

20. A state refund action, however, does not constitute an adequate remedy in all situations. "Special circumstances" may render such an action "of doubtful efficiency," in which case jurisdiction in federal court is not excluded. *Adams County*, 115 F.2d 768, 775 (9th Cir. 1940) (refund action not an adequate remedy where subdivision's ability to pay refund was uncertain), *citing Atlantic Coast Line v. Daughton Commissioner*, 262 U.S. 413, 43 S.Ct. 620, 67 L.Ed. 1051 (1923); *see Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952) (refund suit did not provide adequate remedy where only partial refund was obtainable); *see generally Hillsborough Township v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 451, 90 L.Ed. 358 (1943) ("exceptional circumstances" can take a case outside the general rule of federal non-interference with state taxation). The inability of the taxpayer to pay a proposed assessment may constitute such a "special circumstance." *See Denton v. City of Carrollton*, 235 F.2d 481, 485 (5th Cir. 1956) (assessment may pose such a heavy burden that to deny equitable relief is to deny judicial review). Capitol does not assert, nor is there any indication in the record, that it is unable to pay the proposed assessment here.

before bringing a refund action in California state court. A taxpayer can expedite the state proceedings by paying the proposed tax, filing a claim for refund, and then, after six months, filing a suit for refund in state court. Cal.Rev. & Tax.Code §§ 26073–26076. Capitol argues, however, that the failure to exhaust administrative remedies may limit the issues and evidence that can be presented in a state court action.

The jurisdictional bar of Section 1341 is not avoided where a state prescribes resort to administrative remedies before state court review. *See George F. Alger Co. ˉv. Peck*, 347 U.S. 984, 74 S.Ct. 605, 98 L.Ed. 1120 (1954). Thus, even assuming that Capitol must exhaust its state administrative remedies to be assured of an effective adjudication in state court, the imposition of such a requirement does not necessarily render the state remedies inadequate for purposes of the Anti-Injunction Act. Although exhaustion of administrative remedies may result in a less speedy adjudication, it is also possible that the taxpayer may emerge victorious without the necessity of judicial action or that certain issues may be resolved prior to judicial action.[21] *See, e.g., People v. West Publishing Co.*, 35 Cal.2d 80, 216 P.2d 441 (1950) (exhaustion of administrative remedies affords Board the opportunity to rectify mistake in tax collec-

tion); *Barnes v. State Board of Equalization*, 118 Cal.App.3d 994, 173 Cal.Rptr. 742 (1981). In any event, the rule is not one of comparative remedies: "For a state remedy to be 'adequate' under [section 1341] it need not necessarily be 'the best available or even equal to or better than the remedy which might be available in the federal courts'". *Mandel*, 494 F.2d at 367; *quoting Bland v. McHann*, 463 F.2d 21, 29 (5th Cir. 1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973).

Capitol further argues that the unavailability of certain EMI business records renders the available state remedies ineffective. Capitol contends that it cannot force its parent, EMI, to provide documents necessary for Capitol to carry its burden before the FTB, the State Board of Equalization, or the state court, of establishing that the proposed assessment is inaccurate or illegal.[22] Capitol argues that the lower state court will be limited to the evidence that is submitted to the administrative agencies. Therefore, if such records become available later, Capitol argues that it would be unable to present them in the state court.

Even assuming that records that might become available subsequent to the administrative proceedings would be precluded in a *de novo* trial in state court, this would not render Capitol's state remedies inadequate.[23] It is unclear how much evi-

---

**21.** In the present case, for example, upon consideration of Capitol's Section 25137 petition, the FTB modified its proposed assessment to reflect its determination to only unitize the music portion of Capitol's and EMI's businesses.

Appellees contend that the determination to unitize only the music portion of appellants' business moots "a substantial portion of appellants' case." The removal of non-music business from the proposed assessment may moot some sub-issues and affect the ultimate determination on the merits. The primary issues in these actions, however, are not mooted by the FTB's modification: whether unitary treatment of *any* of the appellants' businesses is appropriate under California law, and, if so, whether such treatment is permissible under the federal Constitution. Inasmuch as these cases are before this Court on the issue of subject matter jurisdiction, rather than on the merits, the Board's determination as to the exclusion of

non-music business does not alter the posture of these cases on appeal.

**22.** The Supreme Court has held, for example, that where a taxpayer is asserting that the application of a particular assessment formula to a particular taxpayer violates its rights to due process, the burden is on the taxpayer to show that the apportionment is "out of all appropriate proportion to the business transacted" in the state. *Hans Rees' Sons, Inc. v. State of North Carolina*, 283 U.S. 123, 135, 51 S.Ct. 385, 389, 75 L.Ed. 879 (1930) (application of single-factor formula in assessment of state tax).

**23.** Capitol relies primarily on *West Publishing Co. v. McColgan*, 27 Cal.2d 705, 166 P.2d 861 (1946), *aff'd*, 328 U.S. 823, 66 S.Ct. 1378, 90 L.Ed. 1603 (1946). In *West*, the taxpayer offered no evidence as to the correct amount of the subject tax during administrative proceedings. Rather, the taxpayer challenged the sub-

dence is unavailable to Capitol and how relevant it is to the issue of the correct amount of the subject assessment.[24] Moreover, it is mere speculation that any additional EMI records will be made available during the pendency of state administrative and judicial proceedings. Most important, Capitol's asserted problem is not unique in kind, though it may differ in degree, from that faced by many taxpayers in suits challenging a proposed assessment; it may not have available all of the information necessary to carry its burden of establishing that the proposed assessment is inappropriate. Even if Capitol were afforded an immediate trial in federal court, presumably, the same records would still be unavailable.[25]

Finally, Capitol argues that its remedy in state court is inadequate because it is uncertain whether the state courts can consider constitutional challenges to the proposed tax assessment. A state remedy is adequate only where it is certain that the taxpayer can raise constitutional claims in the state court. *See Tully,* 429 U.S. at 73, 97 S.Ct. at 222 (federal district court is under equitable duty to refrain from inter-

fering with a state's collection except where "an asserted federal right might otherwise be lost"); *cf. Atlantic Coast Line,* 262 U.S. 413, 43 S.Ct. 620, 67 L.Ed. 1051 (state remedy inadequate where there was uncertainty as to state court's limitations on such a remedy).

The California Constitution prevents a state administrative agency from passing on constitutional questions. Art. 3, Sec. 3.5.[26] Capitol suggests that because constitutional questions cannot be determined by the FTB or State Board of Equalization, the state court will not pass on such questions in a subsequent court action.

Although there is little case law interpreting Section 3.5, it is clear that the section does not preclude a taxpayer from raising constitutional claims in subsequent judicial actions. *See, e.g., Japan Lines, Ltd. v. County of Los Angeles,* 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979) (California Superior Court ruled on the constitutionality of *ad valorem* tax application in refund action); *cf. Fenske v. Public Employment Retirement System (P.E.R.S.) Board of Ad-*

ject tax without regards as to amount. The taxpayer then attempted to introduce such evidence in the subsequent refund suit. The California Supreme Court held that the taxpayer was precluded from introducing such evidence as to the issue of the amount of the assessment because it had failed to provide such evidence to the relevant agencies. The Court concluded that had such evidence been presented to the administrative agencies below, the alleged inaccuracies could have been corrected then. *Id.*

It does not necessarily follow from *West* and *Barnes* that the California courts would prevent a taxpayer from presenting newly available evidence in a refund suit, where the correct amount of the subject assessment was raised before the FTB and the taxpayer provided the Board with the relevant documents within its control.

24. The FTB's "Resolution Denying the Section 25137 Petition of [Capitol]," *see* note 3 *supra,* states that "[t]he Official Secrets Act of the United Kingdom would not appear to preclude the submission of payroll and property factors attributable to the music activities of the organization." The FTB went on to conclude that "[i]n the absence of specific information as to the total property and payroll of the unitary business of which [Capitol], is a member, the

determination of such factors by the department was appropriate and reasonable."

25. Capitol appears to argue that if it cannot carry its burden before the state agencies because of the unavailability of certain EMI records, as a matter of state or constitutional law, such unavailability of records renders the subject assessment illegal. The California courts are capable of addressing that issue and any other issues related to such records.

26. Section 3.5 provides:
An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:
(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional;
(b) To declare a statute unconstitutional;
(c) To declare a statute unenforceable or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations.
Cal.Const. Art. 3, § 3.5.

*ministration,* 103 Cal.App.3d 590, 163 Cal. Rptr. 182 (1980) (Section 3.5 does not deprive superior court of its power to declare unconstitutional a statute governing administrative agencies); *Radtke v. Alcoholic Beverage Control Approval Board,* 491 F.Supp. 42 (C.D.Cal.1980) (Section 3.5 does not preclude state court from determining constitutional issues upon review of administrative discipline of liquor licensee).[27] Rather, Section 3.5 merely restrains administrative agencies from refusing to enforce state statutes on constitutional grounds and from declaring state statutes unconstitutional. *See Goldin v. Public Utilities Commission,* 23 Cal.3d 638, 688 n.18, 153 Cal. Rptr. 802, 822 n.18, 592 P.2d 289, 309 n.18 (1979).[28] Therefore, constitutional challenges to tax assessments may be raised in the California courts. However, as stated above, in order to obtain state court review of constitutional challenges, a taxpayer must first exhaust its administrative remedies. Capitol argues that, under California law, its inability to provide the Board with certain evidence controlled by EMI will constitute a failure to exhaust, thus precluding state court review of the constitutional issues raised in this case.

Capitol bases this argument on *Barnes,* 118 Cal.App.3d 994, 173 Cal.Rptr. 742. In *Barnes,* the plaintiff brought a declaratory action in Superior Court alleging that the Board had wrongfully denied his claim for a refund of a tax overpayment and challenging the constitutionality of certain tax statutes and regulations. The district court granted the Board's motion for summary judgment on the ground that the plaintiff's refusal to provide the Board with documentation for his claim of overpayment constituted a failure to exhaust his administrative remedies. The granting of summary judgment was affirmed on appeal.

*Barnes* is clearly distinguishable from the present case. In *Barnes,* the plaintiff refused to provide the Board with evidence admittedly in his possession. As the court in *Barnes* explained, "[t]he doctrine of exhaustion ... requires a party to use all available agency administrative procedures for relief and to proceed to a final decision on the merits by the agency before he may resort to the courts." 118 Cal.App.3d at 1001, 173 Cal.Rptr. at 746. The purpose of the exhaustion doctrine is to give the Board "the opportunity to rectify any mistake in tax collection." *Id.* As the *Barnes* court recognized, a taxpayer could frustrate this policy if he were allowed to withhold from the Board evidence in his possession and then seek state court review.

In contrast, Capitol asserts that it cannot produce certain evidence possessed by another corporation. The exhaustion doctrine, as applied in *Barnes,* requires that the taxpayer do all he can to prevail in the administrative proceedings; it does not require that he do the impossible. If Capitol has provided the Board with all evidence within its control—a factual issue, which, under the doctrine, the Board has the first opportunity to determine—it will have "use[d] all available agency administrative procedures for relief" and, upon a "final determination on the merits" by the Board, will have exhausted its administrative remedies.

The inability to produce certain evidence may cause the taxpayer to lose in the administrative proceedings because he may be unable to carry his burden of proof. It will not, however, unlike the refusal to produce evidence, preclude judicial review of the Board's determination and of any constitu-

**27.** The authority of California state courts to consider constitutional claims, notwithstanding Section 3.5, is indicated by the language in Section 3.5(a) & (c), "unless an appellate court has made a determination that the enforcement of such statute is unconstitutional," Section 3.5(a), or "is prohibited by federal law or federal regulations," Section 3.5(c). Generally, an appellate court will consider issues only after they have been addressed by the trial court.

**28.** In *Goldin v. Public Utilities Commission,* the California Supreme Court stated that "Section 3.5 places restraints on administrative agencies relative to their refusal to enforce statutes on constitutional grounds; it does not affect their enforcement of their own rules or their competence to examine evidence before them in light of constitutional standards." 23 Cal.3d 638, 688 n.18, 153 Cal.Rptr. 802, 822 n.18, 592 P.2d 289, 309 n.18 (1979).

tional challenges raised by the taxpayer. If it is Capitol's contention that its inability to produce evidence possessed by EMI renders the subject assessment unconstitutional, that challenge too may be raised in state court following an unfavorable ruling by the Board; however, a favorable ruling by the Board would moot that issue—which is precisely the reason that the administrative proceedings should be allowed to run their course.

Thus, contrary to Capitol's contention, the doctrine of exhaustion under California law does not preclude the constitutional review it seeks. Therefore, Capitol has a "plain, speedy and efficient remedy" within the meaning of Section 1341.

## B

 The district court treated the Board Members renewed motions to dismiss as motions for summary judgment and granted the motion in Case No. 80–4113. This Court has held, however, that an order of dismissal, and not a Rule 56 motion for summary judgment, is the proper method for disposing of an action in which subject matter jurisdiction is lacking. *See O'Donnell v. Wien Air Alaska, Inc.*, 551 F.2d 1141, 1145 n.4 (9th Cir. 1977); *Jones v. Brush*, 143 F.2d 733, 735 (9th Cir. 1944). The principle underlying the rule is that the tenor of Rule 56 suggests that summary judgment thereunder deals with the merits of an action and not with matters of abatement. *O'Donnell* at 1145 n.4, *quoting* 6 J. Moore, *Moore's Federal Practice* ¶ 56.03, at 56–57 [footnote omitted] (2d ed. 1976). Lack of subject matter jurisdiction is properly a matter in abatement. *Id.* It is, therefore, error to rule on a summary judgment motion "or any other matter going to the merits" where a court determines that it lacks jurisdiction over the subject matter. *Id., citing* Moore, *supra* at 56–57 & n.8.[29]

The proper remedy is for this Court to vacate the judgment entered in Case No. 80–4113 and to remand with directions to enter judgment dismissing the action for lack of jurisdiction. *See Martucci v. Mayer*, 210 F.2d 259, 261 (3d Cir. 1954), *cited with approval in O'Donnell*, 551 F.2d at 1145 n.4; *but see Jones*, 143 F.2d at 735 (judgment *reversed* and case remanded with directions to enter judgment dismissing the action).

## IV

We now turn to the question of whether EMI has an adequate state court remedy.

The administrative procedures and refund suit provided by California law are remedies available only to taxpayers. Capitol, and not EMI, is the only California taxpayer involved in this controversy. Therefore, California does not provide EMI with an administrative or judicial remedy to challenge tax assessments.

The district court, however, concluded that EMI's interests in opposing the subject assessment is "identical or substantially identical to that of [Capitol], which does have access to the state administrative agencies and state courts." Thus, the court found the appellants' interests "being identical," EMI has "in effect a plain, speedy and efficient state remedy as to the matters for which it complains." The district court therefore also granted summary judgment in favor of the Board Members and against EMI.

The claims of Capitol and EMI are substantially the same. Both seek to have the Board Members enjoined from imposing the subject assessment and from demanding EMI's business records. The interests of the two corporations, however, are not necessarily identical. Although EMI contends that the proposed assessment would, in effect, constitute a tax on its non-United

---

**29.** It is unclear from the record on appeal on what grounds the district court treated the Board Members' motion to dismiss as one for summary judgment under Rule 56. Perhaps the court considered such treatment appropriate because it accepted and considered matters submitted outside the pleadings. However, matters outside the pleadings related to the issue of subject matter jurisdiction can be considered on a motion to dismiss for lack of jurisdiction. *See* 5, C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 at 549–554 (1969).

States business income and that of its other foreign subsidiaries, it is Capitol that would directly have to pay the assessment. Thus, while the harm that Capitol seeks to avoid is the payment of an additional assessment, EMI seeks to avoid a more indirect harm: the diminished return on and value of its stockholdings in its subsidiary corporation, Capitol.[30]

No authority has been presented for the proposition that a nontaxpayer, without state administrative or judicial remedies, is precluded under Section 1341 from maintaining an action in federal court because it has substantially similar interests and claims as a taxpayer that has such state remedies. A nontaxpayer that has stated a claim with respect to an assessment or collection is entitled to a judicial remedy in which they can participate as a party. *See*

**30.** With respect to the EMI records demanded by the FTB, the interests of the two corporations are not identical. Capitol claims that it lacks access to the records, which it needs in order to succeed in its state administrative and judicial proceedings. EMI argues that its disclosure of some of the records would violate the Official Secrets Act of the United Kingdom, disclosure of other records is unwarranted because EMI is not within the taxing jurisdiction of California, and, if the records are not made available, it will be indirectly harmed by the additional tax assessment against its subsidiary.

In addition, EMI contends that the proposed assessment would violate the United States-United Kingdom Income Tax Convention because the effect of the assessment is to tax income earned by EMI outside of California, and that it is entitled to a federal court determination of that claim. Capitol, EMI argues, could only claim protection by the Convention as an incidental beneficiary. We do not address the issues raised with respect to the Convention, in view of our ruling as to Case No. 80–4114.

**31.** EMI argues that the nontaxpayers in the above cited cases may have had a more direct interest in the proposed assessments at issue than does EMI. Such a distinction may be relevant in determining whether EMI has standing to assert a claim related to the assessment against Capitol or whether it has stated such a claim. The issue here, however, is whether a non-taxpaying entity is precluded by Section 1341 from bringing an action related to such an assessment, assuming that the entity has standing and has stated a claim.

*Builders & Developers Corp. v. Manassas Iron & Steel Co.,* 208 F.Supp. 485 (D.C.Md. 1962) (nontaxpayer could invoke federal jurisdiction where state remedy was available only to taxpayer); *see also D. C. Transit System, Inc. v. Pearson,* 149 F.Supp. 18 (D.D.C.1957) (nontaxpayer could invoke federal jurisdiction), *rev'd,* 250 F.2d 765 (D.C. Cir.) (reversed upon reassurances that local remedies would be provided to nontaxpayer); *cf. Pool v. Walsh,* 282 F. 620 (9th Cir. 1922) (nontaxpayer had standing to enjoin collection of federal taxes); *Shelton v. Gill,* 202 F.2d 503 (4th Cir. 1953) (same).[31] Because California does not provide EMI with an effective state remedy for its claims, Section 1341 does not bar the district court from exercising subject matter jurisdiction over such claims.[32]

There is serious question whether EMI, as a non-taxpayer, has standing to challenge the proposed assessment against its subsidiary corporation, Capitol, or whether it has stated a claim upon which relief can be granted. These issues, however, were not the basis for the district court's order granting summary judgment against EMI. Both issues, and any other grounds for dismissal or summary adjudication not raised on this appeal are appropriate for consideration in the first instance by the district court on remand.

The issue of standing, for example, was not raised expressly on this appeal. The issue of standing may involve factual determinations, which are appropriate for initial determination by the trial court. In addition, as a matter of judicial economy, deferring consideration of the standing issue, and any other potential grounds for dismissal of Case No. 80–4114, could be raised and determined at the same time.

Subsequent to oral argument on appeal, appellants moved for leave to file a supplemental memorandum concerning the issue of EMI's standing. We hereby deny that motion.

**32.** Allowing a parent corporation to bring an action in federal district court to challenge a state tax assessment against its subsidiary corporation could result in the circumvention of state remedial procedures that Section 1341 was intended to prevent. *See* note 12 *supra.* Moreover, simultaneous federal and state actions involving substantially similar issues clearly is not desirable. California, however, could eliminate both problems by clearly providing a judicial or administrative remedy in which such non-taxpaying entities, which are interested parties and have stated a claim with

## V

Appellees argue that if EMI's action is not precluded by Section 1341, it is barred by the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment bars federal courts from hearing suits "commenced or prosecuted against one of the United States. Appellees contend that EMI's action can only be brought in federal court if the state has waived its Eleventh Amendment immunity to such an action. This argument, however, presupposes that the Eleventh Amendment would otherwise bar that action.

 EMI filed its action against state officials, members of the FTB. The Eleventh Amendment does not bar federal court actions against state officials to enjoin them from enforcing unconstitutional statutes. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (injunctive action against state attorney general restraining him from enforcing state railroad rate and penalty statute). A suit against state officials is not considered a suit against the state in violation of the Eleventh Amendment where the challenged actions of the officials (1) are beyond the authority granted to them by a valid statute or (2) are performed pursuant to an unconstitutional statute. In both situations, relief can be granted without interpleading the state. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *see, e.g., United States Steel Corp. v. Multistate Tax Commission,* 367 F.Supp. 107,

115 (S.D.N.Y.1973), *aff'd,* 434 U.S. 452, 98 S.Ct. 799, 54 L.Ed.2d 682 (1978).

 The Board Members are charged with acting unconstitutionally by applying the unitary tax method to a domestic subsidiary and its foreign parent. This case falls squarely within the doctrine of *Ex Parte Young.* In such cases, the Eleventh Amendment does not preclude access to the federal courts.

 The state, however, will be deemed the real party in interest, for Eleventh Amendment purposes, if a money judgment is sought against defendants, which will have to be paid out of the state treasury. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hutchinson v. Lake Oswego School District No. 7,* 519 F.2d 961, 966 (9th Cir. 1975), *vacated on other grounds,* 429 U.S. 1033, 97 S.Ct. 725, 50 L.Ed.2d 744 (1977). Thus, a suit seeking a refund of taxes paid to a state is barred by the Eleventh Amendment even when nominally against state officials. *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 at 1349 slip op. 5591 at 5596 (9th Cir. 1981). Although the present action might result in California receiving less tax revenue, EMI seeks prospective injunctive and declaratory relief against state officials, and not a money judgment against the state. Therefore, the Eleventh Amendment is not a bar to EMI's action in federal

respect to an assessment, could participate as parties. (Such a remedy might be particularly appropriate where the state is applying the unitary assessment method to a domestic subsidiary and its foreign parent, and where the state is demanding the business records of the foreign parent).

In addition, the problem of circumvention of state procedures and of simultaneous litigations can be minimized by the district court in many cases. For example, where appropriate, the district court has authority to stay a federal proceeding brought by an interested non-taxpayer, pending a determination of state administrative and judicial proceedings brought by the taxpayer. The district court also may dis-

pose of actions brought by non-taxpayers, either before or after such a stay, where the non-taxpayer lacks standing, is not a real-party-in interest, or has failed to state a claim upon which relief can be granted. *See* note 31 *supra.*

We express no opinion as to whether a stay of Case No. 80–4114 is appropriate in the present circumstances. That determination is left for the Board Members to raise, if they desire, and the district court to consider in the first instance on remand. Among the factors the district court should consider in determining whether to stay such an action, is what imminent harm, if any, that EMI would suffer as a result of such a stay.

court.[33] *Cf. Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) (action against state tax collectors to recover monies wrongfully collected, enforceable by personal judgment); *United States Steel Corp.*, 367 F.Supp. 107 (action to enjoin application by state officials of tax law).[34]

## VI

The order granting summary judgment in Case No. 80–4113 is vacated and the case is remanded with directions to enter an order of dismissal on grounds of lack of subject matter jurisdiction.

The order granting summary judgment in Case No. 80–4114 is reversed and remanded.[35]

---

**33.** In *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the Supreme Court ordered summary dismissal, on Eleventh Amendment grounds, of a mandatory injunction issued against the State of Alabama and the Alabama Board of Corrections, while leaving the injunction intact against officials of the state and board.

**34.** The Board Members argue that if Section 1341 or the Eleventh Amendment is not a bar to Case No. 80–4114, the federal courts should abstain from ruling on the issues presented by EMI. The Board Members rely substantially on *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (abstention is appropriate where federal jurisdiction is invoked for purposes of restraining the collection of state taxes.

There is little doubt that the California courts will uphold the unitary tax scheme generally as authorized by state statute. *See, e.g., Edison California Stores, Inc. v. McColgan*, 30 Cal.2d 472, 183 P.2d 16 (1974). It is unclear, however, whether the California courts would uphold the application of the unitary method in the present case. *Compare Chase Brass and Copper Co. v. Franchise Tax Board*, 10 Cal.App.3d 496, 95 Cal.Rptr. 805 (1970) (application of unitary method to foreign operations overruled) *with Firestone Tire & Rubber Co. v. Franchise Tax Board*, Los Angeles Superior Court (No. 31243 1980) (application of unitary tax method to foreign operations upheld).

It may be desirable to allow the state courts to rule on the applicability of its unitary method in this case before the federal courts consider the constitutional issues presented. In view of this Court's ruling that EMI does not have an adequate remedy in state court, however, it would be inappropriate to dismiss Case No. 80–4114 on abstention grounds. Nevertheless, the considerations relevant to the abstention argument may also be relevant to the issue of whether Case No. 80–4114 should be stayed pending a determination of Capitol's claims in state court.

**35.** Subsequent to oral argument on appeal, Capitol and EMI moved to stay the proposed assessment, pursuant to Fed.R.App.P. 27(b), pending a final determination of these cases by this Court or by the district court on remand. In view of our ruling with respect to Case No. 80–4113, the motion to stay is moot as to that case. Whether the proposed assessment should be stayed with respect to Case No. 80–4114, should be considered in the first instance by the district court on remand. *See* note 32 *supra*. Therefore, appellants' motion to stay the proposed assessment is denied. We express no opinion, however, as to whether the district court should grant such a stay.