**RETIREMENT FUND TRUST OF THE PLUMBING, HEATING and PIPING INDUSTRY OF SOUTHERN CALIFORNIA, et al., Plaintiffs,**

v.

**FRANCHISE TAX BOARD OF the STATE OF CALIFORNIA, et al., Defendants.**

**No. CV 87–3348–WDK.**

United States District Court, C.D. California.

June 30, 1988.

Stuart H. Young, Jr., James A. Bowles, Hill, Farrer & Burrill, Los Angeles, Cal., for plaintiffs.

Raymond B. Jue, Deputy Atty. Gen., John K. Van de Kamp, Atty. Gen., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

KELLER, District Judge.

### FACTUAL BACKGROUND

This is an action for declaratory and injunctive relief instituted by several trust funds, their trustees, and an administrator (collectively "the Trustees") against the Franchise Tax Board of the State of California (the Board), its officials, the Employment Development Department of the State of California ("EDD"), and its director. The Trustees contend that § 514 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a) (1982), preempts the right of the Board to levy on the accrued employee vacation benefits, held by the Trustees, for the purpose of collecting delinquent personal income taxes. This issue is presently being litigated in another case involving a different trust fund in the Superior Court for the County of Los Angeles.

Defendant Franchise Tax Board is the state agency responsible for enforcing the personal income tax laws of the State of California. The EDD generally administers the reporting, collection, and refunding of monies withheld by employers.

The plaintiff Trusts are the Vacation and Holiday Benefit Fund of Southern California Pipe Trades Trust Fund, the Southern California Pipe Trades Trust Fund (collectively "the Vacation Trusts"), and the Retirement Fund of the Plumbing, Heating and Piping Industry of Southern California ("Pension Trust"). All are "employee benefit plans" within the meaning of 29 U.S.C. § 1002(3). They were established pursuant to a collective bargaining agreement between the Southern California Pipe Trades District Council No. 16 and various employers and employer associations in the plumbing, piping, and heating industry in Southern California. The Trustees are "fiduciaries" within the meaning of 29 U.S.C. § 1002(21)(A).

The Board has identified, for the purpose of levying upon a tax debtor's interest in a vacation trust fund, approximately 130 vacation trust funds which have been established in California by various unions and associations. These organizations have a combined membership in excess of 400,000 individuals. The vacation trust funds currently hold $3 million under levies issued by the Board to collect delinquent taxes. A total of 412 orders to withhold have been issued by the Board between 1983 and 1987.

## DISCUSSION

The Board has launched a three-pronged attack on the jurisdiction of this Court. It argues that (1) this action is barred by the Tax Injunction Act of 1937; (2) this Court should abstain from hearing the Trustees' challenge in deference to state proceedings; and (3) the Eleventh Amendment bars this suit against the state agencies named in the complaint. The Eleventh Amendment argument is considered last because a court should not address a constitutional question if the issue may be disposed of on statutory grounds. *See generally Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

### A. *Tax Injunction Act*

The Tax Injunction Act of 1937, 28 U.S.C. § 1341 (1982), provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The essential purpose of the statute is twofold: (1) to prevent any discriminatory effect of allowing out-of-state corporations to bring their tax disputes in federal or state court while citizens of the taxing state are restricted to state courts, and (2) to eliminate disruption of state financing efforts by out-of-state corporate challenges. *Capitol Industries–EMI, Inc. v. Bennett,* 681 F.2d 1107, 1112 n. 12 (9th Cir.), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982). *See generally* Note, *The Tax Injunction Act and Suits for Monetary Relief,* 46 U. Chi. L. Rev. 736, 739–44 (1979). Where applicable, the Tax Injunction Act prohibits both declaratory and injunctive relief. *California v. Grace Brethren Church,* 457 U.S. 393, 408 & 411, 102 S.Ct. 2498, 2507 & 2509, 73 L.Ed.2d 93 (1982); *Air Polynesia, Inc. v. Freitas,* 742 F.2d 546, 547 (9th Cir. 1984). The question presented is whether the state remedies available *to the Trustees* are plain, speedy, and efficient within the meaning of the Act.

Originally, it was thought that ERISA actions might not be subject to the Tax Injunction Act because § 502(e)(1) of ERISA stated in pertinent part that "... the district courts ... shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(e)(1) (1982). Indeed, this question was expressly reserved by the Supreme Court in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 20 n. 21, 103 S.Ct. 2841, 2852 n. 21, 77 L.Ed.2d 420 (1983). However, the Ninth Circuit has held that ERISA actions are subject to the Tax Injunction Act. *Ashton v. Cory,* 780 F.2d 816, 818 & 821–22 (9th Cir.1986). The Court, relying on § 514(d) of ERISA, which states that "[n]othing ... shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States[,]" 29 U.S.C. § 1144(d) (1982), found that the Tax Injunction Act is "apparently unaffected by ERISA." *Ashton,* 780 F.2d at 818. The Court also held that Congress did not intend § 1132(e)(1) to be an exception to the Act. *Id.* at 821–22.

"Plain," "speedy," and "efficient" are terms of art representing distinct procedural considerations. *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 512, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981). In *Rosewell,* the Supreme Court considered a challenge by an Illinois property owner to the state's tax assessment on her property. Under Illinois law, real property owners who contested their property taxes were required first to exhaust available administrative remedies and then, if unsuccessful, to pay the taxes under protest and challenge the assessment in state court. The

customary delay for receipt of a refund was two years and the property owner was not provided with interest commensurate with the delay. *Id.* at 508–10, 101 S.Ct. at 1226–28.

Noting that "speedy" is a relative concept, the Court stated that speed was to be measured against the time required to pursue similar litigation in federal court. *Id.* at 518, 101 S.Ct. at 1232. Because both state and federal courts were plagued by significant docket congestion, a two year delay was found to be a sufficiently speedy remedy. *Id.* at 518–21, 101 S.Ct. at 1231–33. Relying on this reasoning, the *Ashton* court similarly found California's remedial scheme to fall within the boundary of a speedy remedy. *Ashton,* 780 F.2d at 821.

The efficiency of a state remedy is to be judged by whether it "imposes no unusual hardship on [a party] requiring ineffectual activity or an unnecessary expenditure of time or energy...." *Rosewell,* 450 U.S. at 518, 101 S.Ct. at 1231. Measured by this standard, the opportunity to raise a pre-emption claim in California proceedings has also been held to be efficient. *Ashton,* 780 F.2d at 821. The *Ashton* court found this to be true despite California's statutory prohibition against judicial interference in the assessment or collection of any tax, *see* Cal. Rev. & Tax. Code § 19081 (West 1983), because Congress was aware at the time it passed the Tax Injunction Act that most states had similar laws. Efficiency did not require "the best remedy available, nor need it even be equal to or better than that available in federal court ..." so long as it "imposes no unusual hardship...." *Id.*

■ In order for a state remedy to be plain within the meaning of the Tax Injunction Act, there cannot be any uncertainty regarding its adequacy or availability. *Ashton,* 780 F.2d at 819. *Compare Rosewell,* 450 U.S. at 516–17, 101 S.Ct. at 1230–31 (state's failure to pay interest or eliminate delay will not make remedy any less plain) *with Township of Hillsborough v. Cromwell,* 326 U.S. 620, 625–26, 66 S.Ct. 445, 449, 90 L.Ed.2d 358 (1946) (uncertainty surrounding state law's ability to afford full protection to taxpayer's federal rights rendered remedy speculative). Relying upon *Capitol Industries–EMI,* 681 F.2d at 1118–19, the Trustees argue that they have no plain remedy under California law because only the party from whom the tax is withheld—*i.e.,* the taxpayer—may sue for a refund. *See* Cal. Const. art. XIII, § 32 (Supp.1988); Cal.Rev. & Tax.Code § 19051 (West 1983).

In *Capitol Industries–EMI,* a corporation and its parent challenged California's unitary method of tax assessment. The Court held that although section 1341 did not divest the district court of subject matter jurisdiction as to the corporation, it did preclude the exercise of jurisdiction over the parent. The basis for the distinction was that, unlike the subsidiary against whom the tax was assessed, California did not provide the parent with an effective state remedy because the administrative procedures and refund provisions were available only to taxpayers, and the parent was not a taxpayer. *Id.* at 1118–19.

The *Ashton* court carved out an exception to this broad principle.[1] The Court agreed that the case before it differed from *Rosewell* and *Grace Brethren Church* because the vacation trust was not subject to the tax assessment and thus could not sue for a refund. Nevertheless, the Court concluded that California afforded the vacation

1. In order to understand the decision, the procedural history of the case must be considered. Initially, the Board sued a vacation trust fund for the unpaid personal income tax liabilities of three beneficiaries. The Ninth Circuit, in an opinion vigorously dissented in by Judge Tang, ruled that ERISA preempted the Board's attempt to levy upon vacation trust benefits. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 679 F.2d 1307, 1309 (9th Cir. 1982), *vacated,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The decision was eventually vacated by the Supreme Court for lack of federal question jurisdiction with instructions to remand to the Superior Court for Los Angeles County. *See Franchise Tax Board,* 463 U.S. at 284, 103 S.Ct. at 2856. Concurrent with its state court challenge to the Board's withholding notices, the vacation trust fund sought a declaratory judgment that the Board's withholding authority under Cal. Rev. & Tax. Code § 18817 was preempted by ERISA. The *Ashton* court addressed that issue on appeal.

trust a plain remedy since it was free to pursue its preemption argument in a pending state court action. "In this critical respect, the situation differs from that in *Capitol Industries–EMI*, where there were no pending state proceedings in which the nontaxpayer-foreign parent ... could contest the tax assessed against its California subsidiary." *Id.* at 819.

The Trustees urge that this statement is indicative of the narrow scope of *Ashton*. Specifically, they contend that the state remedy will be plain only when there is a *pending* state proceeding in which a federal challenge to a tax assessment may be raised. Consequently, because no similar state action has been filed by the Board regarding the withholding notices issued to the Trustees, the Trustees assert that this case is governed by *Capitol Industries–EMI* and not by *Ashton*.

Although this is certainly a principled argument, the *Ashton* decision cannot be construed so narrowly. The fundamental concern of the panel was that the vacation trust have an opportunity to raise its preemption claim in state court. *Id.* at 819 ("Nevertheless, [the vacation trust], as defendant in the ... proceedings currently pending in [state c]ourt, has the *opportunity to pursue in that forum its preemption argument* and its challenge to the applicability of Cal. Rev. & Tax. Code § 18817."). *Id.* (emphasis added). Thus, the vacation trust's

> clear opportunity to assert its claims in the California courts affords the required full hearing and judicial determination of its preemption claims, with the ultimate right to seek review in the United States Supreme Court. As such, its state court remedy is no less plain than the refund procedures approved in *Grace Brethren Church* and *Rosewell.* That [the vacation trust's] remedy is defensive rather than offensive does not undermine its adequacy for purposes of the Tax Injunction Act.

*Id.* at 819–20.

■ By focusing on whether California provides the Trustees with an adequate opportunity to present their preemption ar-

gument, this Court more effectively implements the statute's broad concern for "the principles of federalism" and "the need of a state to administer its own fiscal operations," *Capitol Industries–EMI*, 681 F.2d at 1112, while simultaneously remaining faithful to the law of this Circuit. Although this focus differs subtly from that suggested by the Trustees, the resulting conclusions are nevertheless identical. As the case currently stands, it is clear that California does not provide an adequate remedy against the proposed withholdings.

California expressly precludes the Trustees from enjoining the Board's efforts to enforce its withholding orders. Similarly, the Trustees may not pay the taxes as a predicate to invoking the state's refund procedures. The Board's suggestion that the Trustees simply refuse to comply with the withholding orders and wait for the Board to bring proceedings against them represents an inadequate alternative in view of the Trustees' exposure to substantial penalties and interest. *See* Cal.Rev. & Tax.Code §§ 18815, 18818 (West 1970 & Supp.1988). *See also National Carriers' Conference Committee v. Heffernan*, 440 F.Supp. 1280, 1283 (D.Conn.1977).

Where, however, the course of events creates an opportunity for a party to challenge a tax assessment without the specter of penalties and interest, the foregoing conclusion will no longer apply. Thus, for example, the existence of a pending state court proceeding may afford a party a plain and efficient forum to raise its challenge free from any danger of assessed penalties or other hardships. *See, e.g., Ashton*, 780 F.2d at 819–20. By a parity of reasoning, if the Board were to agree not to seek any penalties and interest pursuant to an enforcement action in state court, section 1341 might then divest this Court of subject matter jurisdiction. In this instance, however, the Board has refused to proceed in this manner.

As an alternative position, the Board argues that a state interpleader action, whereby the disputed funds would be deposited with the state court, constitutes a plain, speedy, and efficient remedy. *See*

Cal.Civ.Proc.Code § 386 (Supp.1988). The Board's suggested remedy is neither plain nor efficient.

Under California law, an interpleader action is available only to truly disinterested persons whose discharge leaves the remaining parties with substantial rights to be determined respecting the property at issue. *Lincoln Nat'l Life Ins. Co. v. Mitchell*, 41 Cal.App.3d 16, 19, 115 Cal.Rptr. 723, 725 (1974). In this action, however, the Trustees are not disinterested parties because any decision adverse to the beneficiaries regarding preemption would necessarily render the Trustees liable for penalties and interest due to their failure to withhold. Moreover, the Trustees are not disinterested parties given the fiduciary duties imposed upon them by ERISA to safeguard the trust funds. Those duties clearly generate concerns which transcend the interests of an individual beneficiary.

Even if the Trustees were in fact disinterested parties, Cal.Rev. & Tax.Code § 18819, which requires that an order to withhold be complied with "without resort to any legal or equitable action in a court of law or equity," seemingly precludes recourse to an interpleader action. It is also apparent that the considerable number of orders to withhold (412) that have been issued by the Board would portend an interpleader action of immense proportions. Such an action would be unduly burdensome for all parties. *Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 303, 72 S.Ct. 321, 323–24, 96 L.Ed. 335 (1952). *Cf. United States Steel Corp. v. Multistate Tax Comm'n*, 367 F.Supp. 107, 115–16 (S.D.N.Y.1973).

Since no adequate state remedies are available, the Vacation Trusts cannot be said to have a "plain, speedy and efficient" remedy available to them. *See General Motors v. California Board of Equalization*, 815 F.2d 1305, 1308 (9th Cir.1987), *reh'g denied*, 824 F.2d 816, *cert. denied*, — U.S. —, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988). The Trustees' only effective remedy lies in federal court. The Tax Injunction Act therefore does not bar this action.

## B. Abstention

The Board next contends that this Court should abstain from adjudicating this case in favor of the pending state court action. Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it [and] can be justified ... only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). In *Colorodo River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court outlined the three general instances where abstention historically has been deemed appropriate: (1) cases where a state's interpretation of its own law might moot or cast in a different posture the federal constitutional issue before the court; (2) cases presenting difficult questions of state law whose resolution transcends the public policy considerations of the case then at bar; and (3) where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction is sought in order to restrain a state criminal proceeding. *Id.* at 814–17, 96 S.Ct. at 1244–46.

■ This case does not involve a question of state law because preemption is to be decided according to federal jurisprudence. *Marshall v. Chase Manhattan Bank, N.A.*, 558 F.2d 680, 683 (2d Cir.1977). Moreover, this case does not concern the constitutionality of California's tax assessment statute; rather, it relates to the interpretation of a statutory scheme in which federal courts exercise exclusive jurisdiction. *See* 29 U.S.C. § 1132(e)(1) (1982). Under these circumstances, the Ninth Circuit has squarely held that a federal court should not abstain from deciding an ERISA preemption question. *See General Motors*, 815 F.2d at 1308–09.

## C. Eleventh Amendment

■ The Board's final jurisdictional challenge relies upon the Eleventh Amend-

ment's prohibition of any action "commenced or prosecuted against one of the United States...." U.S. Const. amend. XI. It is well settled that although the Eleventh Amendment does not bar suits for declaratory or injunctive relief against individual state officials, it does preclude such actions against the state or its agencies. *See Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *General Motors*, 815 F.2d at 1309. Plaintiffs acknowledged this both in their papers,[2] and at oral argument. Accordingly, both the Board and the EDD will be dismissed as defendants in this lawsuit. *Capitol Industries–EMI*, 681 F.2d at 1120.

### CONCLUSION

Accordingly, this Court properly has jurisdiction over this lawsuit. However, the action is dismissed insofar as it names the Franchise Tax Board and the Employment Development Department as defendants.

IT IS SO ORDERED.

---

**2.** *See* Defendants' Reply at 5 ("[T]he instant action against the state agencies, EDD and FTB, may be barred by the Eleventh Amendment....").