Edward ASHTON, et al.,
Plaintiffs-Appellees,

v.

Kenneth CORY, et al.,
Defendants-Appellants.

No. 83–6451.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 1984.

Decided Jan. 16, 1986.

James P. Watson, Cox, Castle & Nicholson, Los Angeles, Cal., for plaintiffs-appellees.

Patti S. Kitching, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellants.

Before WALLACE, KENNEDY, and FLETCHER, Circuit Judges.

KENNEDY, Circuit Judge:

The Franchise Tax Board of California, the agency charged with enforcement of state personal income tax laws, appeals from a declaratory judgment, issued in favor of the Construction Laborers' Vacation Trust for Southern California (CLVT), holding that Cal.Rev. & Tax.Code § 18817 (West 1983) is preempted by section 514(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a) (1982). We reverse and vacate under the Tax Injunction Act, 28 U.S.C. § 1341 (1982), on the ground that the district court lacked jurisdiction.

CLVT established a vacation fund for eligible employees. The fund is an "employee welfare benefit plan," within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1) (1982). Employers contribute to the fund for each hour worked by each covered employee. The employer contributions to the vacation fund are part of the wages due to the qualifying employees and, as such, are subject to withholding tax, as well as social security and unemployment taxes. Vacation checks are issued annually from the fund to the covered employees.

The Board has served withholding notices on a number of vacation funds, including the one in question, pursuant to Cal. Rev. & Tax.Code § 18817, in an attempt to collect the delinquent personal income taxes of fund participants. In 1980 the Board sued CLVT in Los Angeles Superior Court

for unpaid state income taxes (*CLVT I*). CLVT removed the action to federal court, alleging that Cal.Rev. & Tax.Code § 18817 is preempted by ERIS § 514(a), which provides in pertinent part:

... the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a). The district court granted summary judgment for the Board, and CLVT appealed.

Though not unanimous, our court reversed, ruling that ERISA preempts the state tax law. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 679 F.2d 1307 (9th Cir.1982), *vacated,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The dissent would have held that the district court lacked subject matter jurisdiction under the Tax Injunction Act, and also would have ruled differently on the preemption issue. 679 F.2d at 1309–13. The Supreme Court vacated for lack of federal question jurisdiction on the ground that the issue of preemption, the sole federal question in the case, arose only as a defense, thus precluding removal. The district court was instructed to remand to the Los Angeles Superior Court, where the case is now pending. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ CLVT then brought the instant suit against the Board in federal district court, seeking a declaratory judgment that Cal. Rev. & Tax.Code § 18817 is preempted by ERISA. The district court granted summary judgment for CLVT, and this appeal followed. We review the order of summary judgment *de novo,* in the light most favorable to the nonmoving party, to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Deukmejian v. United States Postal Service,* 734 F.2d 460, 462 (9th Cir.1984) (per curiam); *Ferguson v. Flying Tiger Line, Inc.,* 688 F.2d 1320, 1322 (9th Cir.1982). As there are no disputed questions of fact, we are concerned only with the district court's interpretation and application of the federal statutes.

■ CLVT contends federal subject matter jurisdiction is conferred by section 502(e)(1) of ERISA, which provides in pertinent part:

... the district courts ... shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary.

29 U.S.C. § 1132(e)(1). The Supreme Court in *CLVT I,* while holding that the procedural posture of the case precluded removal, nevertheless reserved the question whether a party in CLVT's position could bring an action in federal court for a declaratory judgment regarding a state tax levy. 463 U.S. at 20 n. 21, 27, n. 31, 103 S.Ct. at 2852 n. 21, 2855 n. 31. The Court cautioned, however, that such an action might be barred by the Tax Injunction Act, 28 U.S.C. § 1341. *Id.* It is precisely this issue that we are required to resolve in the instant appeal.

The Tax Injunction Act provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law *where a plain, speedy and efficient remedy may be had in the courts of such State.*

28 U.S.C. § 1341 (emphasis added). This statute, which bars jurisdiction, and section 502(e)(1) of ERISA, which would appear to confer it, contain no cross references to each other. Section 514(d) of ERISA, however, provides that "[n]othing ... shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States...." 29 U.S.C. § 1144(d) (1982). The applicability of the Tax Injunction Act, therefore, is apparently unaffected by ERISA. Accordingly, we must decide whether CLVT's action for declaratory relief is barred by the Tax Injunction Act. *See California v. Grace Brethren Church,* 457 U.S. 393, 408, 411, 102 S.Ct. 2498, 2507, 2509, 73 L.Ed.2d 93 (1982) (Tax Injunction

Act prohibits declaratory as well as injunctive relief); *Air Polynesia, Inc. v. Freitas*, 742 F.2d 546, 547 (9th Cir.1984) (same). In resolving the issue, we must determine, first, whether there is a plain, speedy, and efficient remedy available to CLVT in the California courts, and, second, whether Congress intended section 502(e)(1) of ERISA to function as an exception to the Tax Injunction Act. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at 20 n. 21, 103 S.Ct. at 2852 n. 21. We answer the first question in the affirmative and the second in the negative, and conclude CLVT's action is barred by the Tax Injunction Act.

In assessing whether CLVT's remedy in the California courts is plain, speedy, and efficient within the meaning of the Tax Injunction Act, we are guided by the Supreme Court's decision in *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). In *Rosewell* the Court construed "plain, speedy and efficient" to require that a state court remedy meet certain minimal procedural criteria. 450 U.S. at 512, 101 S.Ct. at 1228. *See also Air Polynesia, Inc. v. Freitas*, 742 F.2d at 547. The Court noted the Tax Injunction Act was modeled after the Johnson Act of 1934, an Act prohibiting the federal courts from interfering with orders of state administrative agencies to public utilities, which contained identical language and was intended to ensure that the taxpayer be afforded a full hearing and judicial determination of the controversy. *Rosewell*, 450 U.S. at 513–14, 101 S.Ct. at 1229. The Court held the Tax Injunction Act similarly requires that the taxpayer be afforded a full hearing and judicial determination in the state courts of any and all federal or constitutional objections to the disputed state tax. *Id.*

CLVT claims it has no such opportunity to challenge the California tax at issue here, and contends its state court remedy is not plain. CLVT argues further that its remedy is neither speedy nor efficient. We disagree.

■ A state remedy is not plain, within the meaning of the Tax Injunction Act, if there is uncertainty regarding its availability or effect. *See Township of Hillsborough v. Cromwell*, 326 U.S. 620, 625–26, 66 S.Ct. 445, 449, 90 L.Ed.2d 358 (1946) (where there was such uncertainty surrounding the ability of New Jersey law to afford full protection to taxpayer's federal rights as to render the state remedy speculative, the district court properly retained jurisdiction over the case). *See also Rosewell*, 450 U.S. at 516–17, 101 S.Ct. at 1230–31; *Tully v. Griffin, Inc.*, 429 U.S. 68, 76, 97 S.Ct. 219, 224, 50 L.Ed.2d 227 (1976). CLVT, citing *Capitol Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118–19 (9th Cir.), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982), 459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983), argues it has no plain remedy under California law, since it is not the party from whom the tax is due, and may therefore pay the levy and be ineligible for a refund under Cal.Rev. & Tax.Code § 19051 (West 1983). We agree that CLVT's inability to sue for a refund in the California courts distinguishes this case from *Grace Brethren Church*, 457 U.S. at 417, 102 S.Ct. at 2512 (the opportunity to pay a disputed tax and seek a refund in state court constitutes a plain, speedy, and efficient remedy under the Tax Injunction Act), and *Rosewell*, 450 U.S. at 517, 528, 101 S.Ct. at 1231, 1236 (same).

■ Nevertheless, CLVT, as defendant in the *CLVT I* proceedings currently pending in Los Angeles Superior Court, has the opportunity to pursue in that forum its preemption argument and its challenge to the applicability of Cal.Rev. & Tax.Code § 18817. In this critical respect, the situation differs from that in *Capitol Industries-EMI*, where there were no pending state proceedings in which the nontaxpayer-foreign parent (EMI) could contest the tax assessed against its California subsidiary. CLVT's clear opportunity to assert its claims in the California courts affords the required full hearing and judicial determination of its preemption claims, with the ultimate right to seek review in the United

States Supreme Court. As such, its state court remedy is no less plain than the refund procedures approved in *Grace Brethren Church* and *Rosewell.* That CLVT's remedy is defensive rather than offensive does not undermine its adequacy for purposes of the Tax Injunction Act. *See Kohn v. Central Distributing Co.,* 306 U.S. 531, 533–34, 59 S.Ct. 689, 691, 83 L.Ed. 965 (1939). *See also* H. Hart & H. Wechsler, *The Federal Courts and the Federal System* 978 (2d ed. 1973).

CLVT relies on *National Carriers' Conference Committee v. Heffernan,* 440 F.Supp. 1280 (D.Conn.1977), for the proposition that the opportunity to argue the preemption issue in the *CLVT I* proceedings does not constitute a plain remedy. The court in *Heffernan,* relying on *Georgia Railroad & Banking Co. v. Redwine,* 342 U.S. 299, 303 n. 11, 72 S.Ct. 321, 324 n. 11, 96 L.Ed. 335 (1952), held the possibility of a state collection suit, in which plaintiff could raise his ERISA preemption claims as a defense, did not constitute a plain remedy under the Tax Injunction Act. 440 F.Supp. at 1283. The *Heffernan* case is not binding on our court, and neither *Heffernan* nor *Redwine* is on point in any event. In both *Heffernan* and *Redwine,* no collection action had yet been filed in state court, and it was not entirely clear that the *Heffernan* plaintiff and the *Redwine* appellant would have the opportunity to raise their objections to the tax as defendants. Here, in contrast, the Board has already instituted collection proceedings for unpaid taxes, naming CLVT as defendant, and the action is currently pending before the Los Angeles Superior Court, following remand from the United States Supreme Court. The case before us is readily distinguishable from *Redwine* and *Heffernan,* since there is no need to speculate whether state proceedings might be brought, or whether CLVT would receive a full hearing and judicial determination on its preemption claim.

CLVT also cites *Heffernan* to show that the present appeal falls within the judicially-created exception to the Tax Injunction Act for actions brought by the United States or by a private party intended by Congress to have the same access to the federal courts as the United States, to protect the United States and its instrumentalities from improper state exactions. *Heffernan,* 440 F.Supp. at 1283 (citing *Department of Employment v. United States,* 385 U.S. 355, 358–59, 87 S.Ct. 464, 466–67, 17 L.Ed.2d 414 (1966) (the Red Cross, as an instrumentality of the United States, is not subject to the jurisdictional bar of the Tax Injunction Act, and may sue in federal court to protect its interests)). Tracing the analysis in *Heffernan,* CLVT argues that since this action could have been brought by the Secretary of Labor, an instrumentality of the United States, pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) (1982), it must fall within the *Department of Employment* exception. The *Department of Employment* case, however, holds only that the United States may sue in federal court to enjoin the collection of taxes assessed against itself or its instrumentalities. Though the tax in *Heffernan* was assessed against the ERISA fund itself, thereby arguably implicating the Secretary of Labor, the levy at issue in this action is an attempt by the Board to collect the independently assessed personal income taxes of delinquent fund participants. The Board is proceeding against CLVT merely in its capacity as stakeholder, and the *Department of Employment* exception does not apply.

Extending the *Heffernan* analysis further, CLVT contends the case of *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), is controlling on this appeal. Once again, CLVT's reliance on *Heffernan* is misplaced. In *Moe* the Supreme Court held the Tax Injunction Act did not bar an Indian Tribe from challenging state taxes in federal court, where the suit was one the United States could have brought as trustee. *Id.* at 471–75, 96 S.Ct. at 1640–42. *Moe,* however, was decided several years before *Grace Brethren Church* and *Rosewell,* and its exception to the Tax Injunction Act for Indian tribes has been

narrowly construed by our court, which has refused to extend the exception to include individual members of Indian tribes. *See Comenout v. Washington,* 722 F.2d 574, 577 (9th Cir.1983); *Dillon v. Montana,* 634 F.2d 463, 469 (9th Cir.1980). *Moe* therefore does not control this appeal. Accordingly, we reject CLVT's arguments and conclude the pending proceedings in Los Angeles Superior Court afford CLVT a plain remedy as contemplated by the Tax Injunction Act.

■ In determining whether CLVT's remedy in the California courts is also speedy, the Supreme Court's opinion in *Rosewell* is instructive. There, the Court, in holding that a two-year delay in the Illinois refund procedure qualified as a speedy remedy under the Tax Injunction Act, stated that speedy is a relative concept, intended to be evaluated against the time normally required for similar litigation. 450 U.S. at 518, 101 S.Ct. at 1231. Though it is not clear exactly how much time will be needed to resolve the pending *CLVT I* litigation in Los Angeles Superior Court, we are mindful of the considerable docket congestion plaguing both state and federal courts, and of the usual delay inherent in comparable litigation. *See id.* at 518–20, 101 S.Ct. at 1231–32. Congress did not suggest in the Tax Injunction Act that the state remedy, in order to be speedy, must be the most expeditious. *Id.* at 520, 101 S.Ct. at 1232. Under the circumstances, we conclude CLVT's remedy in the California courts is within the permissible definition of speedy.

Applying similar reasoning, CLVT's opportunity to raise its preemption claims in the state court proceedings also qualifies as efficient under the Tax Injunction Act. CLVT argues this remedy cannot be deemed efficient, on the ground that Cal. Rev. & Tax.Code § 19081 (West 1983) explicitly prohibits California courts from preventing or enjoining the assessment or collection of any tax. Congress, however, was clearly aware that most states have similar statutes, S.Rep. No. 1035, 75th Cong., 1st Sess. 1–2 (1937); H.R.Rep. No.

1503, 75th Cong., 1st Sess. 2 (1937), and could not have intended to classify the remedies in all these states as inefficient under the Tax Injunction Act. *Accord Grace Brethren Church,* 457 U.S. at 412 & n. 28, 102 S.Ct. at 2509 & n. 28; *Rosewell,* 450 U.S. at 523–24, 101 S.Ct. at 1234. We have previously held that for a state remedy to be adequate under the statute, it need not be the best remedy available, nor need it even be equal to or better than that available in federal court. *Mandel v. Hutchinson,* 494 F.2d 364, 367 (9th Cir.1974). Here, CLVT's remedy of asserting its ERISA claims in the pending state proceedings, like the refund procedure approved in *Rosewell,* imposes no unusual hardship on CLVT, and requires no ineffectual activity or unnecessary expenditure of time and energy. *See Rosewell,* 450 U.S. at 518, 101 S.Ct. at 1231. Accordingly, we hold CLVT's remedy in the California courts qualifies as efficient under the Tax Injunction Act.

■ Having decided CLVT has a plain, speedy, and efficient remedy in the California courts, we now turn to the second prong of our inquiry, namely, whether Congress intended section 502(e)(1) of ERISA to be an exception to the Tax Injunction Act, as CLVT contends. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. at 20 n. 21, 103 S.Ct. at 2852 n. 21. Nothing in the legislative history of ERISA suggests that in enacting federal law to protect individual pension rights and providing for exclusive federal jurisdiction over certain civil enforcement proceedings under ERISA, Congress sought to override the historic concern for state fiscal autonomy that underlies the Tax Injunction Act. The legislative history supports CLVT's contention that Congress intended the development of a uniform federal law under ERISA. *See, e.g.,* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4655; S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4838, 4865; 120 Cong.Rec. 29,928, 29,933 (1974) (statement of Sen. Williams),

*reprinted in* 1974 U.S.Code Cong. & Ad. News 5177, 5188. However, we cannot infer from Congress' desire for uniformity an intent to weaken the proscription of the Tax Injunction Act against actions in federal court to enjoin state tax levies. As the Supreme Court suggested in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at 21, 25, 103 S.Ct. at 2852, 2854, Congress, had it chosen to do so, could have provided for federal jurisdiction over actions by states against trustees of plans covered by ERISA. Alternatively, Congress could have provided for removal of such actions to federal court. In the absence of such express congressional action, we cannot infer that Congress intended impliedly to take the drastic step of carving out an exception to the Tax Injunction Act. We find that the interest of uniformity, while of considerable importance to the efficient functioning of the judicial process, yields here to the paramount principles of comity and deference to the revenue collection procedures of the individual states, provided the state courts afford a plain, speedy, and efficient remedy for challenging state assessments. We conclude section 502(e)(1) of ERISA was not enacted as an exception to the Tax Injunction Act.

■ CLVT suggests the Tax Injunction Act was enacted to prevent foreign corporations from delaying payment of their taxes by bringing federal diversity actions for declaratory or injunctive relief, in this manner obtaining an unfair advantage over in-state citizens and corporations who would have to pay the tax first and then seek a refund in state court. CLVT argues that since these concerns are not relevant here, the Tax Injunction Act should not operate as a jurisdictional bar to its federal declaratory judgment action. We do not think the primary purpose of the Tax Injunction Act was to remedy the inequitable financial advantage enjoyed by foreign corporations in state tax matters, and we reject CLVT's arguments.

It is true that Congress was concerned about the financial drain on state resources resulting from foreign corporations withholding large sums of money pending the outcome of protracted tax litigation in the federal courts. *See* S.Rep. No. 1035, 75th Cong., 1st Sess. 1–2 (1937); H.R.Rep. No. 1503, 75th Cong., 1st Sess. 2 (1937). However, had Congress enacted the Tax Injunction Act solely to address this inequity, it could have limited the Act's jurisdictional bar to federal diversity actions. *Rosewell*, 450 U.S. at 522 n. 29, 101 S.Ct. at 1234 n. 29. Instead, the expansive language of the Act belies the notion that Congress was concerned exclusively with this issue. *Id. Cf.* Comment, *The Tax Injunction Act and Suits for Monetary Relief,* 46 U.Chi.L.Rev. 736, 743 n. 37 (1979) (if federal courts are now required by *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply state equity law, foreign corporations contesting state taxes will no longer be treated differently from in-state citizens, and the Tax Injunction Act, if promulgated only to rectify the former inequity, will have been substantially mooted just one year following its enactment).

The Supreme Court has repeatedly stated that the principal purpose of the Tax Injunction Act was to curtail federal court interference with state revenue collection procedures. *Grace Brethren Church*, 457 U.S. at 408–09, 102 S.Ct. at 2507–08; *Rosewell,* 450 U.S. at 522, 101 S.Ct. at 1233; *Tully v. Griffin, Inc.,* 429 U.S. at 73, 97 S.Ct. at 222. The Court has long recognized the dangers inherent in disrupting the administration of state tax systems, and the corresponding need for federal court restraint when deciding cases that will affect these delicate state operations. *See, e.g., Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 102, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981); *Perez v. Ledesma,* 401 U.S. 82, 127 n. 17, 91 S.Ct. 674, 698 n. 17, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part). The Court's reluctance to interfere with the assessment and collection of state taxes was evident long

before the enactment of the Tax Injunction Act. *See, e.g., Dows v. City of Chicago,* 78 U.S. (11 Wall.) 108, 110, 20 L.Ed. 65 (1871) ("It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.").

Congress was aware of the historical reluctance of federal courts to meddle in state fiscal operations and was mindful of the need to shield state revenue collection from potentially disruptive federal court interference. *See McNary,* 454 U.S. at 102–03, 102 S.Ct. at 179; *Rosewell,* 450 U.S. at 522, 101 S.Ct. at 1233. *See also* S.Rep. No. 1035, 75th Cong., 1st Sess. 1–2 (1937); H.R.Rep. No. 1503, 75th Cong., 1st Sess. 2 (1937); 81 Cong.Rec. 1415–16 (1937) (remarks of Sen. Bone). The independent functioning of state tax systems, which the Tax Injunction Act sought to safeguard, would be undermined by allowing federal district courts to exercise jurisdiction over actions such as the one brought by CLVT. Given the congressional concern for state fiscal autonomy, we do not believe Congress intended such a result.

We hold that CLVT's opportunity to pursue its preemption challenge to Cal.Rev. & Tax.Code § 18817 as defendant in the proceedings now pending in Los Angeles Superior Court constitutes a plain, speedy, and efficient state remedy. Additionally, since we conclude Congress did not intend section 502(e)(1) of ERISA as an exception to the Tax Injunction Act, we hold CLVT's federal declaratory judgment action is barred by the Tax Injunction Act.

We VACATE the judgment below and remand to the district court to dismiss the action for lack of subject matter jurisdiction.