**DIRECT MARKETING ASSOCIATION, INC., Plaintiff–Appellant,**

v.

**William M. BENNETT; Conway H. Collis; Ernest J. Dronenburg, Jr.; Paul Carpenter; Gray Davis; Cindy Rambo; John Gibbs; Lucian Khan; Shiela J. Gustin, Defendants–Appellees.**

No. 89–15716.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 1990.

Decided Oct. 23, 1990.

---

**1452**

& Rohwer, Sacramento, Cal., for plaintiff-appellant.

Steven J. Green, Deputy Atty. Gen. of the State of Cal., Sacramento, Cal., for defendants-appellees.

Before CHOY, WIGGINS and LEAVY, Circuit Judges.

CHOY, Circuit Judge:

Direct Marketing Association (DMA) appeals the district court's dismissal of its action against various members of the California State Board of Equalization. The district court held that the Tax Injunction Act barred federal jurisdiction over DMA's action. We reverse.

## FACTS

Plaintiff-appellant DMA is a trade association whose members are engaged in direct mail advertising and marketing of products. DMA states that a majority of its members are mail order houses located outside of California that accept orders for products by mail or telephone and ship the products to customers.

Defendants are individual members of the California Board of Equalization, which is responsible for enforcing California's sales and use tax law.

In 1987, the State of California amended a portion of its sales and use tax law to require interstate mail order retailers to collect use tax from their California customers. The Board has demanded that many of DMA's members located outside of California who sell products to California residents by use of credit cards issued by California financial institutions register as retailers engaged in business in California under section 6203(f) of the California Revenue and Taxation Code.[1] California

George S. Isaacson and Martin I. Eisenstein, Brann & Isaacson, Lewiston, Maine; John A. Mendez, Downey, Brand, Seymour

---

1. Section 6203(f) reads, in relevant part:
   (E)very retailer engaged in business in this state and making sales of tangible personal property for storage, use, or other consumption in this state ... shall, at the time of making the sales ... collect the tax from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the board.

requires registered retailers to pay a use tax collected from every person purchasing an item for storage, use, or consumption in the state unless a sales tax was previously paid on the item. Cal.Rev. & Tax.Code §§ 6201 through 6207, 6401.

DMA filed this action in district court on August 19, 1988, alleging that enforcement of the state's sales and use tax with respect to DMA's out-of-state members violates the commerce clause of the United States Constitution and the due process clause of the fourteenth amendment.[2] DMA sought injunctive and declaratory relief, as well as attorney's fees under 42 U.S.C. § 1988.

The district court granted defendant Board's motion to dismiss on the ground that DMA's members had a plain, speedy, and efficient remedy under state law. Specifically, the district court found that DMA's members were not precluded from paying the contested taxes and then filing for a refund. It thus held that the Tax Injunction Act barred proceedings in federal court.[3] A dismissal based on lack of subject matter jurisdiction is freely reviewable on appeal. *Redding Ford v. California State Board of Equalization*, 722 F.2d 496, 497 (9th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).

## DISCUSSION

### I.

The Tax Injunction Act bars federal courts from enjoining the collection of state taxes "where a plain, speedy and efficient remedy may be had in the courts of such State." [4] A state remedy is not plain within the meaning of the Tax Injunction Act, however, "if there is uncertainty regarding its availability or effect." *Ashton v. Cory*, 780 F.2d 816, 819 (9th Cir.1986). *See also Township of Hillsborough v. Cromwell*, 326 U.S. 620, 625–26, 66 S.Ct. 445, 449, 90 L.Ed. 358 (1946) (where uncertainty regarding the availability of a remedy under New Jersey law rendered the state's remedy speculative, district court properly retained jurisdiction); *Alcan Aluminum Ltd. v. Department of Revenue of State of Oregon*, 724 F.2d 1294, 1297 (7th Cir.1984) (ambiguity of Oregon tax statutes rendered availability of remedy uncertain, and thus the Tax Injunction Act did not apply to bar federal jurisdiction); *Garrett v. Bamford*, 538 F.2d 63, 67 (3d Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976) ("... it is sufficient for a finding of inadequacy that the availability of the state remedy be merely uncertain.").

In California the sole legal remedy for resolving tax disputes is a postpayment refund action.[5] Only after filing a claim

"Retailer engaged in business in this state" ... means (f) Any retailer soliciting orders for tangible personal property by mail if the solicitations are substantial and recurring and if the retailer benefits from any banking, financing, debt collection, telecommunication, or marketing activities occurring in this state or benefits from the location in this state of authorized installation, servicing, or repair facilities.

2. DMA's complaint relies on the constitutional doctrine of nexus established by the U.S. Supreme Court in *National Bellas Hess, Inc. v. Department of Revenue of the State of Illinois*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), that a state may not impose use tax collection responsibilities on a retailer that maintains no physical facilities or employees within the state, but, instead, limits its business activities to the distribution of catalogs through the United States Mail and then delivers its goods by parcel post and interstate common carriers. DMA alleges that the Board's application of section 6203(f) to DMA members who

have no nexus with California is inconsistent with the constitutional principle established in *National Bellas Hess*.

3. Having decided that the Tax Injunction Act barred federal jurisdiction, the court declined to rule on defendant Board's contention that DMA lacked standing to bring suit on behalf of its members. The standing issue is not raised on this appeal. This court has held in a similar context that, where standing is not the basis for the district court's order of dismissal, the issue should be remanded to be dealt with in the first instance by the district court. *Capitol Industries–EMI, Inc. v. Bennett*, 681 F.2d 1107, 1119, n. 31 (9th Cir.), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982).

4. 28 U.S.C. § 1341.

5. Article XIII, section 32 of the California Constitution prohibits lawsuits to enjoin the collection of state taxes. It provides:
    "No legal or equitable process shall issue in any proceeding in any court against this State

for refund can a party institute a court action challenging the collection of a tax.[6] The issue in this case is whether DMA's members may avail themselves of the refund procedure for sales and use taxes set forth in sections 6901 through 6908 of the California Revenue and Taxation Code.

DMA contends that the state's remedy is unavailable for two reasons. First, citing California Revenue & Taxation Code § 6902, DMA claims that only a taxpayer may make a claim for refund. DMA argues that since the use tax is levied on the consumer and the retailer is a mere collector of the tax, retailers may not seek a refund of the tax they collect and pay to the Board. Second, DMA argues that the remedy is not available because its members have not received determinations.

We agree. The relevant provision, section 6902, establishes the limitation periods for filing refund claims. It reads:

(a) *For taxpayers filing returns* on other than an annual basis, except as provided in subdivision (b) no refund shall be approved by the board after three years from the last day of the month following the quarterly period for which the overpayment was made, or, *with respect to determinations made under Article 2 (commencing with Section 6481), 3 (commencing with Section 6511), or 4 (commencing with Section 6536)* of Chapter 5 of this part, after six months from the date the determinations

become final, or after six months from the date of overpayment, whichever period expires the later, unless a claim therefor is filed with the board within such period. (emphasis added).

Section 6902 thus provides limitation periods only for "taxpayers" and those who have received "determinations." DMA's members fall into neither category, thus making it sufficiently uncertain whether they have a remedy available to them.

## II.

First, California law makes clear that the retailer is not the taxpayer with respect to the use tax. The use tax, unlike the sales tax, is imposed upon the *purchaser* rather than the retailer. Under the California use tax statute, the use tax[7] is an excise tax imposed on "the storage, use, or other consumption in this state of tangible personal property purchased from any retailer ..." Cal.Rev. & Tax.Code § 6201. Section 6202 of California's use tax statute provides that "(e)very person storing, using, or otherwise consuming in this State tangible personal property purchased from a retailer is liable for the tax." In contrast, the sales tax is a tax imposed upon the retailer for the privilege of selling tangible personal property.[8] Although California's use tax is imposed upon the purchaser, the retailer is responsible for collecting the tax from the purchaser and remitting it to the Board.[9]

---

or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."
Section 6931 of the California Revenue and Taxation Code applies Article XIII, section 32 to sales and use tax disputes, prohibiting actions to enjoin or prevent their collection. The statute and Constitution have been read to bar declaratory judgment actions as well as injunctive relief. *See State Board of Equalization v. Superior Court,* 39 Cal.3d 633, 639, 217 Cal.Rptr. 238, 241, 703 P.2d 1131 (1985).

6. "No suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally determined or collected unless a claim for refund or credit has been duly filed pursuant to Article

1 (commencing with Section 6901)." Cal.Rev. & Tax.Code § 6932.

7. The use tax is a means of *taxing those transactions occurring outside of the territory of a state, where a sales tax cannot be constitutionally imposed. See generally,* "Use Tax Collection Jurisdiction: A State Border Held Hostage," 63 *Chicago–Kent L.Rev.* 747, 749 (1987). Under a use tax, a person buying something from an out-of-state source is liable for a use tax at a rate identical to the sales tax in the purchaser's home state.

8. The provision dealing with imposition of the sales tax states: "For the privilege of selling tangible personal property *at retail a tax is hereby imposed upon all retailers ..."* Cal.Rev. & Tax.Code § 6051.

9. Cal.Rev. & Tax.Code § 6203(f).

California case law also makes clear that the use tax is not a tax imposed upon the retailer. In *Bank of America v. State Board of Equalization,* the California Court of Appeals explained the relationship of the retailer to the use tax:

> ... the use tax is a tax levied upon the purchaser. It is not a tax on the retailer; nor does it shift to him because he has the duty to collect it from the consumer ... The liability of the retailer is not, therefore, for the use tax itself but for an *amount equivalent* to it because of his default in his duty as collection agent. *The taxpayer is the person ultimately liable for the tax itself, and not the person who pays the tax liability. Bank of America v. State Board of Equalization,* 209 Cal.App.2d 780, 799, 26 Cal.Rptr. 348, 359–60 (1963) (citations omitted) (emphasis added).

*See also Brandtjen & Kluge v. Fincher,* 44 Cal.App.2d Supp. 939, 111 P.2d 979, 981 (1941) (use tax makes the purchaser, not the seller, liable for the tax).

The Board insists that the taxpayer/nontaxpayer distinction is immaterial with respect to invoking the refund procedure. Rather, the Board argues, whoever files the tax return is entitled to initiate a claim for refund under section 6902. However, the Board fails to point to any statutory language that so provides. The only parties referenced in the "claim for refund" provision of section 6902, apart from those who receive "determinations," are *"taxpayers* filing returns ..." In California, it is clear that a "taxpayer" is simply not the person who remits to the Board the amount of tax collected. We decline to overlook the specific statutory language of section 6902 and thus reject the Board's argument.

The district court accepted the Board's contention that a retailer who voluntarily remits use taxes may file a refund claim. However, each case cited by the district court involved a retailer who had been issued a formal determination by the Board. *National Geographic Society v. State Board of Equalization,* 16 Cal.3d 637, 640–41, 128 Cal.Rptr. 682, 684, 547 P.2d 458,

683–84 (1976), *aff'd,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977); *Bank of America v. State Board of Equalization,* 209 Cal.App.2d at 789–90, 26 Cal.Rptr. at 353. Thus the District Court disregarded DMA's argument that the existence of an outstanding assessment is critical to the right of a non-taxpayer to use the statutory claim for refund procedure.

DMA's concern that its status as a non-taxpayer renders precarious its right to seek a tax refund finds ample support in other cases. For example, with respect to the sales tax, California courts have held that the purchaser is precluded from seeking a refund because he is not considered the "taxpayer." *See State Board of Equalization v. Superior Court,* 111 Cal. App.3d 568, 570, 169 Cal.Rptr. 3, 4 (1980). In *Javor v. State Board of Equalization,* 12 Cal.3d 790, 117 Cal.Rptr. 305, 527 P.2d 1153 (1974) the California Supreme Court agreed with the Board that customers may not seek a refund of sales tax since the sales tax is imposed upon the retailer. In fact, in *Javor* the Board argued the exact opposite of what it argues here. It contended that "since the sales tax is imposed not on the consumer but on the retailer who is authorized but not required to reimburse himself by 'passing on' the tax, *there is no statutory authority for an action against the Board by an individual paying sales tax reimbursement* (i.e., by the consumer) *and such authority is a prerequisite to suit against the Board."* 117 Cal.Rptr. at 309, 527 P.2d at 1157 (citation omitted) (emphasis added).

The Board attempts to explain *State Board of Equalization v. Superior Court,* 111 Cal.App.3d 568, 169 Cal.Rptr. 3, on the ground that the purchaser cannot bring a sales tax refund action because he is not the party who remits the tax to the Board. However, the court itself predicated its opinion on the fact that the purchaser is not the taxpayer with respect to the sales tax. Likewise, in the instant case, the retailer is not the "taxpayer," since, under California law, "[t]he taxpayer is the person ultimately liable for the tax itself, and not the person who pays the tax liability." *Bank of America v. State Board of Equal-*

*ization,* 209 Cal.App.2d at 799, 26 Cal.Rptr. at 360; *See generally* Hartman, "Collection of the Use Tax on Out-of-State Mail–Order Sales," 39 *Vand.L.Rev.* 961, 991 (1986) ("[I]t is to be noted that the mail-order house is not the taxpayer, at least not in the normal sense of that term.")

Similarly, in a case closely analogous to the present matter, this court found that a non-taxpayer had no clear right to sue for a refund with respect to the California state income tax. *Ashton v. Cory,* 780 F.2d at 823. In *Ashton v. Cory,* the non-taxpayer was an employer's vacation trust that was required to determine the amount of withholding from employees' wages, file returns, and remit the tax to the California Franchise Tax Board. Cal.Rev. & Tax. Code § 18817. Despite the fact that the vacation trust was the party required to remit the tax to the Board, this court agreed with the trust's argument that the trust had "no plain remedy under California law, since it is not the party from whom the tax is due, and may therefore pay the levy and be ineligible for a refund under Cal.Rev. & Tax. Code § 19051." [10] The Board's purported distinction of *Ashton* on the ground that the retailer is responsible for paying the use tax and filing tax returns is unavailing. The employer vacation trust plan, just like the retailer for the use tax, is required to collect the state income tax by withholding from employees' wages, to pay the tax to the state and to file returns. *Id.* at 819. And just like the retailer, the vacation trust fund is not the taxpayer, but nevertheless is required to collect and remit the tax.

The legislative history of section 6902 casts further doubt on whether or not a remedy is currently available to retailers who voluntarily remit use taxes. The predecessor statute to the current use tax statute was explicit in providing that retailers who voluntarily paid use taxes could file a refund action. Section 29 of the Use Tax Act of 1935 provided:

No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or against any officer thereof to prevent or enjoin under this act the collection of any tax or any amount of tax herein required to be collected; but after payment of any such tax or any such amount of tax herein required to be collected under protest, duly verified and setting forth the grounds of objection to the legality thereof, *the retailer or person making the payment may bring an action against the State Treasurer in a court of competent jurisdiction in the county of Sacramento for the recovery of the amount paid under protest* (emphasis added).

In 1941, however, the use tax statute was amended and the second part of section 29, providing the explicit right of action to the retailer, was deleted. No similar provision permitting a retailer the right to sue for a refund for use taxes was incorporated into the new tax code.

Finally, the Board fails to cite any case that unequivocally shows that a non-taxpayer retailer who voluntarily remits use taxes to the Board can sue for a refund. The Board's reliance on *Holland Furnace v. State Board of Equalization,* 177 Cal. App.2d 672, 2 Cal.Rptr. 606 (1960) is misplaced, because the language of the current refund provision differs from that in *Holland.* Importantly, at the time of the *Holland* decision, section 6902 did not specifically refer to "taxpayers." [11] In 1977,

---

**10.** Section 19051 provides: "If the Franchise Tax Board or the board, as the case may be, finds that there has been an overpayment of any liability imposed under this part by a taxpayer for any year for any reason, the amount of the overpayment shall be credited against the amount then due from the taxpayer and the balance refunded to the taxpayer."

**11.** At the time of the *Holland* decision, the relevant provision read:

"No refund shall be approved by the board after three years from the last day of the month following the close of the quarterly period for which the overpayment was made, or, with respect to determinations made under Article 2 or 3 of Chapter 5 of this part, after six months from the date of overpayment, whichever period expires the later, unless a claim *therefor is filed with the board within such period." See Holland,* 2 Cal.Rptr. at 607.

section 6902 was amended and the word "taxpayers" inserted, bringing section 6902 into its current form.[12]

### III.

DMA also argues that the state remedy is not available to its members because the Board has not yet issued a determination. The district court dismissed this argument on the ground that it "presents a ripeness issue that has no relevance to the issue of the ultimate availability to plaintiff's members of the remedy."

We disagree. This court has recently held inadequate a refund scheme in which a trust had to wait for the issuance of an assessment of amounts not paid before invoking the refund procedure. *Retirement Fund Trust of the Plumbing v. Franchise Tax Board,* 909 F.2d 1266, 1273–74 (9th Cir.1990). We stated two reasons for our holding. First, to invoke the refund procedure, the trust had to first fail to pay the amounts due, which failure exposed it to substantial penalties and interest. Second, such a scheme is inadequate because whether the state will issue an assessment becomes a matter of speculation. *Id.* (citing *Ashton v. Cory,* 780 F.2d at 820); *see also Georgia RR & Banking Co. v. Redwine,* 342 U.S. 299, 303 n. 11, 72 S.Ct. 321, 324 n. 11, 96 L.Ed. 335 (1952) (finding scheme under which the taxpayer must await state collection procedure to present federal claims inadequate because "this is hardly a remedy that could have been invoked by appellant."). These rationales apply in the instant case. Failure to file use tax returns by DMA's members exposes them to the risk of substantial penalties,[13] and whether or not the state will issue a determination is a matter of speculation. The mere possibility that DMA's members may receive determinations does not render certain the availability of a remedy. Certainty that a remedy exists is an important factor in establishing that a state court

remedy is "plain." *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 516–17, 101 S.Ct. 1221, 130–31, 67 L.Ed.2d 464 (1981).

### CONCLUSION

The current statutory language, the legislative history of the use tax statute, and the interpretation of analogous refund provisions all make it sufficiently uncertain whether a retailer who voluntarily remits use taxes may file a refund claim under section 6902. Because the availability of a remedy to DMA's members is uncertain, the Tax Injunction Act does not apply to bar federal jurisdiction. We therefore REVERSE and REMAND.

---

**12.** The Board's reliance on *Union Oil Co. v. State Board of Equalization,* 60 Cal.2d 441, 34 Cal.Rptr. 872, 386 P.2d 496 (1963) is equally inapposite, since the refund provision at the time of that case contained no reference to "taxpayers." Moreover, the use tax collector

who sought a refund had received an assessment.

**13.** Cal.Rev. & Tax.Code § 6511 (imposing a 10 percent penalty for failure to file a return).