947 F.2d 949
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CLIFFORD ELECTRONICS, INC., Plaintiff-counter-defendant-Appellant,
v.
LO-JACK CORPORATION, Defendant-counter-claimant-Appellee.
 No. 90-55331.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1991.
Decided Oct. 25, 1991.
 
 Before HUG, WILLIAM A. NORRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Clifford Electronics, Inc. (plaintiff below) appeals an adverse summary judgment in its federal antitrust action. We affirm.
 
 
 3
 This antitrust case concerns a police-assisted stolen vehicle recovery network ("SVRN"). A SVRN permits police officials to track, locate and recover stolen motor vehicles. For the purposes of this case, a SVRN consists of two major components: (1) a radio transponder, which is installed in an automobile and emits a unique radio signal, and (2) the "law enforcement components," which consist of radio antennae scattered over the coverage area, a computer at a police station, and tracking equipment located in specially-equipped police cars. When a car is stolen, the transponder is electronically activated and begins emitting its own unique radio signal. This signal is picked up by the antennae and beamed to the police station. The computer at the station matches the radio signal with the car in which the transponder emitting that signal is installed. This information is, in turn, sent to police cars. Thus, police cars have available a method of tracking the car and a physical description of the car. This enables them to locate, identify and recover the car.
 
 
 4
 Appellee Lo-Jack Corporation (Lo-Jack) manufactures SVRNs. In 1989, Lo-Jack signed an agreement with the City of Los Angeles to install the law enforcement components of the SVRN at Los Angeles Police Department (LAPD) stations and in LAPD police cars. Although the contract with the City is not exclusive, we view the evidence in the light most favorable to Clifford, see Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986), and conclude that there is sufficient evidence in the record to indicate that the installation of a second set of law enforcement components in Los Angeles would not be feasible: first, police lack the capacity to accommodate two systems, and second, two overlapping systems would present significant electronic interference problems.
 
 
 5
 Lo-Jack exercises, then, exclusive control over what appears to be the sole feasible system of law enforcement components in Los Angeles. Once again viewing the evidence in the light most favorable to Clifford, we also think that there is sufficient evidence to indicate that Lo-Jack will be able to use its exclusive control in the city to gain control over much of the law enforcement components market in the Greater Los Angeles area. Other communities in the Greater Los Angeles area will turn to Lo-Jack because they will want to install a system of law enforcement components that is compatible with the system adopted by the LAPD. Otherwise, a vehicle stolen in Pasadena, for example, would escape the reach of the Pasadena tracking system by traveling to Los Angeles.
 
 
 6
 Having established itself as the sole supplier of law enforcement components in Los Angeles, Lo-Jack began marketing the radio transponder component of the SVRN. A radio transponder will not work with the law enforcement components unless it contains the coding information allowing it to communicate with the computer installed at the center of the system. Lo-Jack has exclusive access to the computer program of the law enforcement components. As a result, it has complete control over access to the radio transponder market.
 
 
 7
 Clifford manufactures conventional car alarms. It also claims to wish to market a radio transponder to compete with Lo-Jack's model. It does not choose to market the law enforcement components of the system and, in any case, claims that it would be unable to do so in the Los Angeles area. To make its transponder work with Lo-Jack's law enforcement components, Clifford requires Lo-Jack to assign its transponders particular frequencies. Clifford also demands access to Lo-Jack's computer filing system, to allow Lo-Jack's computer to translate the radio signature from each of Clifford's transponders into a physical description of the car in which it is located. Clifford claims, and Lo-Jack does not deny, that the required information does not involve divulging Lo-Jack's trade secrets or technological expertise.
 
 
 8
 When Lo-Jack refused to share this information, Clifford sued, charging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Specifically, Clifford charged monopolization of the "transponder market", monopolization of an essential facility, and an illegal tie-in of Lo-Jack's law enforcement components to its transponders. The district court granted summary judgment for Lo-Jack on the basis that the entire SVRN was one product.[1]
 
 
 9
 We affirm without reaching the question whether "law enforcement components" and "radio transponders" constitute one single product or two separate products for antitrust purposes. Clifford's claim that Lo-Jack engaged in an illegal tie-in arrangement fails because there is no evidence in the record that Lo-Jack has engaged in a tie-in arrangement. It is axiomatic that a tie-in occurs only when a company refuses to sell one product (here, access to the law enforcement components) unless the buyer is willing to purchase another product (here, a radio transponder). See Northern Pacific Railway Co. v. United States, 356 U.S. 1, 5 (1958) (defining a tying arrangement as "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product") (emphasis added); see also 3 Phillip Areeda & Donald Turner, Antitrust Law § 733a (1978) (defining a tying arrangement as "the sale or lease of one item only on the condition that the buyer or lessee take a second item") (emphasis added). The record contains no evidence that Clifford offered to pay a reasonable access fee for use of the law enforcement components.[2] All Clifford wanted was access to a product at no cost. Unless Clifford made an effort to purchase access to the law enforcement components by offering an access fee that would have rewarded Lo-Jack for the development costs of law enforcement components, the capital risk that such development entailed and the installation cost of the Los Angeles system, we do not see how we can find that Lo-Jack has tied the purchase of one product to the purchase of another.
 
 
 10
 When stripped of its rhetoric, Clifford's claim boils down to a demand that it have access to Lo-Jack's law enforcement components at no cost. Lo-Jack has no legal obligation to create free access to its system. The facts before us establish neither a tie-in arrangement nor a "refusal to deal"; they merely amount to a refusal to give away a product for free. Lo-Jack's refusal to give away access to its law enforcement components is no more violative of antitrust laws than Clifford's refusal to give away its car alarms to consumers would be.
 
 
 11
 Although we hold there was no tie-in under the facts of this case, we express no view on the question whether, had Clifford attempted to purchase access to the law enforcement systems, Lo-Jack's refusal to provide such access would have established a tie-in. Thus, we are neither intimating that Lo-Jack's refusal to deal would have amounted to illegal behavior under antitrust laws nor suggesting that the SVRN is not one product for purposes of antitrust analysis. We are declining to answer those questions, because, even if the SVRN were a package of several products, there exists no tie-in arrangement here because Clifford has made no effort to purchase anything.
 
 
 12
 Our determination that there is no tie-in arrangement is fatal to all of Clifford's claims. Clifford's monopolization claim fails because Lo-Jack has done nothing to hinder Clifford from designing, producing and marketing its own law enforcement components. If a monopoly does in fact exist in the market of "law enforcement components" in Los Angeles, it is one created by virtue of the fact that the LAPD will not carry a parallel system. Accordingly, Clifford may have a grievance against the LAPD, but there is no evidence that Lo-Jack should be held responsible under antitrust laws for the LAPD's actions. See Areeda, supra, at § 621c ("Governments themselves may prevent competition by granting a franchised monopoly, [b]ut the monopoly as such is immune to antitrust relief....").
 
 
 13
 For the foregoing reasons, the summary judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 It is fairly clear how the district court connected this conclusion to its rejection of Clifford's specific claims. On the monopolization claim, the court's reasoning seems to be that, because Clifford was free to compete with Lo-Jack in marketing of SVRNs, there was no monopolization. The second claim, monopolization of an essential facility, was explicitly rejected by the court, on the basis that, with only one product involved, there was no separate "facility," access to which was being denied. The third claim, the illegal tie-in, was rejected evidently on the ground that there could be no tying of one product to another since there was only one product
 
 
 [2]
 During argument, Clifford offered to a pay a de minimus fee for the cost of the changes that Lo-Jack would have to make in its computer program to accommodate Clifford's transponders. This is plainly not an access fee. An access fee must permit Lo-Jack to recoup all its business costs in the development and installation of the system and earn a reasonable profit